**Peter A. LaCHANCE, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 2009.

Decided Dec. 15, 2009.

Scott I. Fegley, Yardley, for petitioner.

Jonathan D. Koltash, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Peter A. LaChance (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming an Unemployment Compensation Referee's (Referee) decision denying Claimant benefits under Section 402(h) of the Unemployment Compensation Law (Law).[1] Claimant contends that the Board erred in denying him unemployment benefits because he falls within the sideline activity exception to the general self-employment exclusion. Finding no error in the Board's decision, we affirm.

Following his separation from employment with St. Mary's Medical Center (Employer), under conditions which were not disqualifying, Claimant filed an application for unemployment benefits. On November 6, 2008, the Unemployment Compensation Service Center (Service Center) issued a determination finding Claimant ineligible for benefits under Section 402(h), which precludes a claimant from receiving benefits for any week in which he engages in self-employment. Claimant appealed the Service Center's decision, and an evidentiary hearing was held before the Referee on December 8, 2008. Claimant, appearing pro se, testified on his own behalf. Following the hearing, the Referee issued a decision, making the following findings of fact:

1. The claimant worked as a vice president of human resources for St. Mary's Hospital beginning August 15, 2007 and last worked on October 15, 2008.

2. In 2000, the claimant began a business called The Quintessence Corporation focused on leadership development, and had his primary income from this source.

3. When the claimant began employment with St. Mary's he ceased actively putting time into Quintessence Corporation, but did continue to file taxes and report expenses or losses.

4. The claimant's employment with St. Mary's was his primary source of his income during his employment.

5. The claimant owns 100% of Quintessence Corporation, which he has since transferred to his wife's ownership.

6. The claimant has a financial stake in Quintessence Corporation, and networks, advertises and prospects for it.

7. When the claimant ceased working for St. Mary's, the claimant increased the time he spends on Quintessence Corporation.

(Referee's Decision/Order, Findings of Fact (FOF) ¶¶ 1–7.) Based on these findings of fact, the Referee concluded that Claimant was self-employed and, thus, ineligible to receive benefits under Section 402(h).

Claimant, represented by counsel, appealed to the Board and: (1) requested a remand hearing to further develop the record; and (2) challenged the Referee's determination on the merits. The Board denied Claimant's remand request and af-

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h).

firmed the Referee's determination, adopting the Referee's findings of fact and conclusions of law. The Board explained:

The claimant admitted that he did not do any work for Quintessence prior to being separated from Saint Mary's Medical Center. Although at one time Quintessence was his primary source of income, the claimant allowed his business to become dormant while he worked fulltime for Saint Mary's. After his separation, the claimant increased his work for Quintessence approximately twenty hours per week. The claimant contends that the work he did with Quintessence was merely preparations to expand his sideline business. However, the Board does not find this assertion credible. The claimant testified that he was "calling, writing, [and] networking people" in an effort to secure work for his company. Based on his admission, the claimant has failed to meet his burden.

(Board's Order, March 4, 2009.) Claimant now petitions this Court for review of the Board's order.[2]

■ It is well-established that the "Law is a remedial statute, and excepting the sections imposing taxes, its provisions must be liberally and broadly construed so that its objectives (insuring that employees who become unemployed through no fault of their own are provided with some semblance of economic security) may be completely achieved." *Wedner v. Unemployment Compensation Board of Review*, 449 Pa. 460, 467, 296 A.2d 792, 796 (1972) (quoting *Jones v. Unemployment Compensation Board of Review*, 163 Pa.Super. 271, 60 A.2d 568, 571 (1948)). However, the Law "was not designed to insure a weekly income to those engaged in business ventures who may not realize a profit therefrom during various weekly periods." *Urban v. Unemployment Compensation Board of Review*, 189 Pa.Super. 503, 151 A.2d 655, 656 (1959). The Law cannot be used to give benefits to people otherwise employed. *See Kirk v. Unemployment Compensation Board of Review*, 57 Pa. Cmwlth. 92, 425 A.2d 1188, 1191 (1981) (stating that "[p]ersons who are not so unemployed should not receive benefits from the fund").

■ To that end, Section 402(h) of the Law excludes the self-employed from receiving benefits, stating that "[a]n employee shall be ineligible for compensation for any week . . . (h) In which he is engaged in self-employment." 43 P.S. § 802(h). The Law does not expressly define the term "self-employment," but, in determining whether a claimant is engaged in self-employment, our courts have looked at whether the claimant engaged in positive acts to establish an independent business venture. *Leary v. Unemployment Compensation Board of Review*, 14 Pa.Cmwlth. 409, 322 A.2d 749, 750 (1974). In addition, claimants who engaged in business and the solicitation of clients have been viewed as self-employed, regardless of whether the claimants received any income from those efforts. *Keslar v. Unemployment Compensation Board of Review*, 202 Pa.Super. 434, 195 A.2d 886 (1963). "Normally the employer has the burden of proving that a claimant is self-employed, but where the bureau acts on its own in suspending benefits because of self-employment, the bureau carries the burden." *Teets v. Unemployment Compensation Board of Review*,

---

2. This Court's review is "limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Teets v. Unemployment Compensation Board of Review*, 150 Pa.Cmwlth. 419, 615 A.2d 987, 989 (1992).

150 Pa.Cmwlth. 419, 615 A.2d 987, 989 (1992).

■ The Law recognizes that there are industrious individuals who, while employed by another, engage in self-employment which is not their primary source of income. These individuals who become unemployed through no fault of their own may, nonetheless, receive benefits under Section 402(h), which grants an exemption to the general self-employment exclusion. This is known as the sideline activity exception and provides that:

> [A]n employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood.

43 P.S. § 802(h). Our Courts have interpreted this statutory language and held that the sideline activity exception is applicable when the following conditions are met: "(1) that the self-employment activity precedes valid separation from full-time work; (2) that it continues without substantial change after separation; (3) that the claimant remains available for full-time work after separation; and (4) that the self-employment activity is not the primary source of the claimant's livelihood." *Moshos v. Unemployment Compensation Board of Review*, 77 Pa.Cmwlth. 493, 466 A.2d 258, 259 (1983). A claimant who wishes to fall within the exception bears the burden of showing that *all* of these requirements are met. *See id.* n. 2.

■ Before this Court, Claimant argues that the Board erred in concluding that he was self-employed under Section 402(h). Claimant first contends that, as a matter of law, his post-employment actions, together with the fact that he generated no income from the Quintessence Corporation (Quintessence), did not constitute a substantial change and, therefore, that he satisfies the requirements of the sideline activity exception, rendering him eligible for unemployment compensation benefits. Claimant also argues that, because he received no income from Quintessence, he did not have to report any information about his activity with Quintessence, and his candor should not disqualify him from receiving benefits. Finally, Claimant contends that the Board erred in piercing the corporate veil and finding that he was self-employed. Claimant asserts that, at most, he is an uncompensated, part-time employee of Quintessence and, thus, not ineligible for benefits pursuant to Section 402(h).

The following facts are undisputed. In 2000, Claimant started Quintessence and maintained the corporation during his employment with Employer. (FOF ¶¶ 1–2.) During this time, Claimant did little in furtherance of Quintessence. (FOF ¶ 3.) After his separation from Employer, Claimant began "calling, writing, [and] networking [with] people" in an attempt to garner business for Quintessence. (Hr'g Tr. at 4; FOF ¶ 6.) These interactions "oftentimes happen[ed], coincidentally, when looking to see if [Claimant] can work full-time for the organizations." (Hr'g Tr. at 4.) The parties concede that Claimant meets the first, third, and fourth conditions of the sideline activity exception.[3]

---

**3.** While the parties do not dispute Claimant's satisfaction of the first, third, or fourth conditions, we question whether Claimant truly meets the first condition, which is whether

The central dispute is whether Claimant meets the second condition of the sideline activity exception. That is, whether Claimant's increased activity in Quintessence, from zero hours per week to twenty hours per week, absent evidence of income, constitutes a substantial change after separation in which case Claimant would not meet the exception. In support of his argument, Claimant relies on this Court's decisions in *Dausch v. Unemployment Compensation Board of Review,* 725 A.2d 230 (Pa.Cmwlth.1999), and *LaSalle v. Unemployment Compensation Board of Review,* 105 Pa.Cmwlth. 16, 522 A.2d 1160 (1987).

In *Dausch,* this Court examined the second condition of the sideline activity exception and concluded that "mere preparations undertaken to expand a sideline business ... do not constitute a *substantial change* in the sideline business." *Id.* at 232 (emphasis added). There, the claimant was a licensed attorney and a certified public accountant. While employed by an accounting firm (employer), the "claimant also engaged in a sideline legal and accounting practice." *Id.* at 231. The employer laid the claimant off in May 1995, but he continued operating his sideline business while receiving unemployment compensation benefits, "which were to terminate on November 4, 1995." *Id.* Because the claimant's job search was unsuccessful, claimant leased office space, in October 1995, "in the hope of expanding his sideline business into a business that could support his family." *Id.* During the month of October, the

"claimant painted the walls and shelving of the leased office space, refinished furniture and moved it into the office and installed a phone system. Claimant also arranged for advertisements of his business to appear in November issues of newspapers and magazines." *Id.* Claimant began to occupy the leased office on November 10, 1995. *Id.*

In discussing whether a substantial change has occurred in a sideline business pursuant to the second condition, this Court cited to *Quinn v. Unemployment Compensation Board of Review,* 67 Pa. Cmwlth. 172, 446 A.2d 714, 715 (1982), and *Higgins v. Unemployment Compensation Board of Review,* 45 Pa.Cmwlth. 509, 405 A.2d 1024, 1025 (1979), as examples of how this Court has "focused primarily on whether a claimant is working in the activity for *significantly more hours* than he did prior to separation." *Dausch,* 725 A.2d at 232 n. 7 (emphasis added). In *Quinn,* 446 A.2d at 715, and *Higgins,* 405 A.2d at 1025, we held that an increase in hours from thirty to sixty per week and from ten to forty-five per week, respectively, constituted a substantial change in activity in the claimants' sideline businesses. The *Dausch* court expanded its focus and did not only look at the hours worked prior to and after separation, but also examined the claimant's actions to determine whether they were preparatory in nature or whether services were actually performed. *Dausch,* 725 A.2d at 232. This Court held that because there was no evidence that the claimant worked from the leased office

the self-employment activity precedes valid separation from full-time work. Section 402(h) of the Law states, in relevant part, that "an employe ... shall be deemed not engaged in self-employment by reason of *continued participation* ... in any *activity* ... undertaken while customarily employed by an employer in full-time work." 43 P.S. § 802(h) (emphasis added). It is unclear whether simply

filing tax returns for a corporation constitutes the type of "continued participation" in an "activity" envisioned by the Law. However, this Court need not consider this question as we conclude that Claimant fails to satisfy the requirements of the second condition, which relates to the self-employment activity continuing without substantial change after separation.

prior to his benefits being terminated, solicited business or advertised for business prior to his termination, or performed services for clients prior to the time that his benefits were terminated, "the claimant's sideline business activity did not substantially change after his separation from [employer]." *Id.*

Here, we must disagree with Claimant's contention that his conduct was merely preparatory in nature and therefore his increase in hours is analogous to that in *Dausch.* First, just like in *Quinn* and *Higgins,* Claimant significantly increased the number of hours he worked (from zero to 20 hours per week) at his sideline business *after* his termination. While working for Employer, Claimant did almost no work for Quintessence; however, once his employment ceased, he began to actively network and to seek new clients for Quintessence.[4] Second, Claimant's conduct of networking for twenty hours per week cannot be classified as merely preparatory and similar to the conduct of the claimant in *Dausch.* In *Dausch,* the claimant painted the walls and refinished the furniture for his new law and accounting office; he did not advertise, solicit or perform legal or accounting services. When Claimant, in this case, engaged in soliciting clients and discussing the professional services he could offer to them, he was performing activities that he would perform as part of his independent business venture. This type of activity was specifically found lacking in *Dausch.* Therefore, Claimant's argument that *Dausch* requires Claimant to be found eligible for benefits because his activity did not constitute a substantial change after separation is rejected.

Claimant also contends that, because he generated no income from his sideline activity, he has established that his self-employment activity continues without substantial change pursuant to *LaSalle.* However, first, we acknowledge this Court's rule of law that claimants who engage in business and the solicitation of clients have been viewed as self-employed, regardless of whether the claimants received any income from those efforts. *Keslar,* 195 A.2d at 886. Second, we note that, although this Court in *LaSalle* stated that during the claim weeks at issue the claimant in that case did not generate any income from the sideline business, our Court also held that there was "no record evidence to indicate that Claimant's real estate activity ha[d] increased since her work separation." *LaSalle,* 522 A.2d at 1162. Unlike the facts in *LaSalle,* there is clear evidence here that Claimant significantly increased the amount of work he did for Quintessence following his separation from Employer, which was more than preparatory in nature. Accordingly, we conclude that Claimant's conduct here constitutes a substantial change in sideline activity.

Next, relying on *LaSalle* and *Hanley v. Unemployment Compensation Board of Review,* 96 Pa.Cmwlth. 105, 506 A.2d 994 (1986), Claimant asserts that he was not legally required to submit information about Quintessence because the corporation was not producing any income. However, Claimant's interpretation of these decisions is not correct. In both *LaSalle* and *Hanley,* this Court held that information which would not otherwise affect the claimant's rights under the Law need not be disclosed. *LaSalle,* 522 A.2d at 1163;

4. Tellingly, Claimant stated that his reason for maintaining Quintessence, from a tax-purpose standpoint, was to possibly "start-up" the company should he lose employment, as Quintessence was at one time Claimant's primary source of income. (Hr'g Tr. at 4; FOF ¶ 2.)

*Hanley,* 506 A.2d at 996. However, in these cases, the self-employment endeavor first had to qualify under the sideline activity exception in order for that information to have been deemed immaterial. Here, because Claimant's work for Quintessence does not qualify for the exception from self-employment, the information submitted by Claimant is relevant and certainly affects Claimant's rights under the Law. Consequently, Claimant's belief that he did not have to report information about Quintessence is incorrect, and his assertion fails.

■ Finally, Claimant asserts that the Board erred in piercing the corporate veil to find him self-employed. To show self-employment under Section 4(*l*)(2)(B) of the Law, 43 P.S. § 753(*l*)(2)(B), employers must prove "that a claimant (a) has been and will continue to be free from control or direction over the performance of his or her services [a]nd (b) is customarily engaged in an independent trade." *Kardon v. Unemployment Compensation Board of Review,* 40 Pa.Cmwlth. 20, 396 A.2d 487, 488 (1979). Here, Claimant argues that he has transferred ownership of Quintessence to his wife, (FOF ¶ 5); however, Claimant is still very much in control of his own actions. At no point in his testimony did Claimant indicate that he takes direction from his wife when acting in his capacity as an "employee" of Quintessence. Therefore, Claimant's argument that the Board erred in piercing the corporate veil to find him self-employed is rejected.

While we certainly sympathize with Claimant in these financially difficult times, we are constrained by rules of law. The Board did not commit an error of law and, therefore, the Board's order is affirmed.

### *ORDER*

**NOW,** December 15, 2009, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **AFFIRMED.**