**Michael J. LELLO, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 3, 2012.

Decided Jan. 22, 2013.

---

William Ruzzo, Kingston, for petitioner.

Erin B. Lokhandwala, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Michael J. Lello (Claimant) petitions for review of the December 23, 2011 orders of the Unemployment Compensation Board of Review (Board) affirming four decisions of a referee, who determined that Claimant was ineligible for benefits under section 402(h) of the Unemployment Compensation Law (Law)[1] for the compensable weeks ending April 2, 2011 through August 6, 2011, resulting in a fault overpayment of $7,266 subject to recoupment, and imposing a 16–week penalty. We reverse.

In February 2011, Claimant began receiving unemployment benefits based upon his termination from employment with Wilkes Barre Publishing Company (Employer). Beginning April 1, 2011, Claimant submitted written assignments to Issue Media Group (IMG) and, beginning May 1, 2011, Claimant performed copy editing assignments for American Online (AOL), working as an independent contractor. (Notes of Testimony (N.T.) at 8.) Claimant called the Scranton service center to clarify that he was not employed full-time but had accepted freelance work with IMG and AOL. The service center

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h). Section 402(h) provides that an employee shall be ineligible for compensation for any week in which he is engaged in self-employment.

then initiated an investigation during which Claimant reported his income from IMG and AOL. (N.T. at 9; Record Item No. 2.) On August 15, 2011, the Department of Labor and Industry (Department) issued two Notices of Determination (Notices) finding that Claimant was self-employed and denying benefits to Claimant pursuant to section 402(h) of the Law. (Record Item No. 5.) The Notices listed AOL and IMG as Claimant's putative employers.[2] (Record Item No. 5.)

Claimant timely appealed the Notices, explaining on each of his appeal petitions that he "[was] not seeking [benefits] based on this employer. He did only very limited part-time freelance work for this employer." (Record Item No. 6.)

Despite being provided proper notice, neither AOL nor IMG appeared at the referee's October 3, 2011 hearing. (Record Item No. 11.) Claimant acknowledged that he began working for AOL and IMG after he was terminated by Employer. (N.T. at 3.) He was paid at the rate of $125 or $200 per article written for IMG and $7.50 per article edited for AOL. (N.T. at 3.) Claimant testified that he was "sometimes" assigned articles if he was available, he could accept or reject the assignments, and he completed the assignments from his home, using his personal computer and other items that he already had for his personal use. (N.T. 4–5.) In response to the referee's questions, Claimant testified that he believed he was entitled to continuing benefits based on his previous separation from employment with Employer because he spent only an insubstantial amount of time on this part-time work, which he considered to be a sideline activity. (N.T. at 6.)

Claimant testified that while he was employed with Employer, he spent a few hours each week submitting album reviews and interviews for TopManners.com, a music website, and writing articles for Guacovision, a music publication. He also informally contributed to entertainment websites operated by friends and acquaintances. (N.T. at 7–8.) Claimant said that he was not paid for that work, but he submitted the assignments in the hope of obtaining similar work for pay. (N.T. at 7.) Claimant stated that while he was working for Employer, he spent about five hours per week on unpaid freelance work and after his separation from Employer, he spent roughly the same amount of time on the freelance work he submitted to AOL and IMG. (N.T. at 8.) Claimant described his income from AOL and IMG as "slight" and, based on the minimal time expended, he considered that work to be a sideline activity relative to his primary livelihood. The record does not reflect how many assignments Claimant accepted and completed or how much Claimant earned from AOL and IMG. (N.T. at 10.)

The referee issued two essentially identical decisions on October 4, 2011, and the referee's relevant findings of fact may be summarized as follows. Claimant was attached to IMG as a freelance writer at a rate of $125–$200 per article from April 1, 2011 to May 26, 2011, and he was attached to AOL as a copy editor at a rate of $7.50 per article edited from May 1, 2011 to June 30, 2011. Claimant had previously been employed by Employer as an editor from July 3, 2007 until February 25, 2011;

2. The Department issued two additional determinations, imposing a fault overpayment pursuant to section 804(a) of the Law, 43 P.S. § 874(a), and imposing 16 penalty weeks pursuant to section 801(b) of the Law, 43 P.S. § 871(b). Claimant appealed, and the referee and the Board affirmed. In the present matter Claimant also appeals from these determinations; however, due to our disposition of the merits, we need not address those determinations separately.

his separation from that employment is not at issue in these appeals. Claimant, IMG, and AOL considered Claimant to be an independent contractor with respect to the work he performed for those entities.

AOL and IMG provided Claimant with a form 1099. Claimant was free from direction and control in the performance of his assignments with AOL and IMG. Because Claimant uses his own computer, internet services, pens, paper, and other office materials, he has an investment in the business. He works from home, sets his own hours, and receives no benefits from either AOL or IMG. (Record Item No. 12.)

Based on these findings, the referee concluded that Claimant was an independent contractor, was customarily engaged in an independently established trade, and therefore, was self-employed. The referee rejected Claimant's contention that he should not be disqualified from continuing to receive benefits based on this part-time, sideline activity on the grounds that the activity at issue did not continue without change after his separation from Employer, but, rather, only began after that separation. Relying on section 402(h) and section 4(*l*)(2)(b) of the Law, the referee affirmed the Department's determinations that Claimant was ineligible for benefits. (Record Item No. 12.)

Claimant appealed to the Board, arguing that the referee's findings were unsupported by substantial evidence and that the referee erred when he found that Claimant's work was not a sideline business. (Record Item No. 13). The Board issued separate orders affirming the referee's decisions and adopting the referee's findings and conclusions. Claimant then appealed to this Court,[3] and we granted the Board's request to consolidate the appeals.

■■■ Claimant argues that his uncontradicted testimony established that his work for AOL and IMG was a sideline activity that does not render him ineligible for benefits pursuant to section 402(h) of the Law. In relevant part, section 402(h) provides that an employee is ineligible for compensation for any week in which he is engaged in self-employment:

> Provided, however, That an employee who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood.

43 P.S. § 802(h).[4] Under section 402(h), an individual who engages in self-employ-

---

**3.** Our scope of review in an unemployment compensation appeal is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**4.** We note that the Bureau of Unemployment Compensation Benefits and Allowances (Bureau) initiated the present action and identified AOL and IMG as Claimant's employers.

Normally, the employer has the burden of proving that a claimant is self-employed, but where, as here, the Bureau initiates proceedings asserting ineligibility due to self-employment, the Bureau carries the burden of proof. *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893 (Pa.Cmwlth.2011); *Teets v. Unemployment Compensation Board of Review*, 150 Pa.Cmwlth. 419, 615 A.2d 987 (1992). Because Claimant does not challenge the Board's determination that he is self-employed, we do not address whether the Bureau met its burden in this case.

ment is ineligible for benefits unless: (1) the self-employment began prior to the termination of the individual's full-time employment; (2) the self-employment continued without substantial change after the termination; (3) the individual remained available for full-time employment; and (4) the self-employment was not the primary source of the individual's livelihood. *Kress v. Unemployment Compensation Board of Review*, 23 A.3d 632, 636 (Pa.Cmwlth. 2011). A claimant bears the burden of proving that his activity is non-disqualifying under section 402(h). *Id.*

■ Relying on *Kress*, Claimant argues that the Board erred in holding that he is ineligible for benefits because he satisfied all of the above criteria. Specifically, Claimant contends that the Board erred as a matter of law in concluding that he failed to demonstrate that his self-employment continued without substantial change after his separation from Employer. The Board counters that Claimant's informal, unpaid activities do not establish the beginning of a sideline activity, and, because Claimant did no work for AOL or IMG prior to his separation from Employer, Claimant did not satisfy the first element of the sideline activity exception. Alternatively, the Board asserts that even if Claimant's informal, unpaid activities constituted the beginning of sideline work, Claimant substantially changed the nature of his sideline activities by entering into formal business relationships and receiving pay. As discussed below, we conclude that the Board's contentions are contrary to relevant case law.

The claimant in *Kress* was an attorney. Prior to his employment with a law firm, the claimant represented indigent defendants in federal court pursuant to a court appointment. After beginning work as an associate at the law firm, the claimant continued to represent indigent defen-

dants, but, pursuant to an agreement with his employer, he turned over to the employer the $125 per hour he was paid for handling those cases. When the claimant's employment with the firm terminated, the claimant continued to work on those cases from home.

The claimant's application for unemployment benefits was approved, and his employer appealed. Before the referee, the claimant testified that he continued to handle court-appointed cases but that he had been able and available for full-time work since his separation from the law firm. The claimant stated that he had malpractice insurance, stationery with his letterhead, business cards and a post-office box. He also testified that there had not been any increase in the volume of his sideline employment; he did not take any clients from the employer other than the indigent clients; he did not engage in any advertising; he did not rent space; and he did not solicit clients. The claimant acknowledged that it was within his discretion whether to accept the court-appointed cases, adding that he was not willing to accept cases that were not referred to him by the federal court because he was not starting his own practice.

The referee determined that the claimant was ineligible for benefits under section 402(h), and the Board affirmed. The claimant appealed to this Court, arguing that he met all of the criteria necessary to establish an exception to the general disqualification for benefits under section 402(h). With respect to the first requirement, that the self-employment began prior to the termination of the claimant's full-time employment, the Board argued that the claimant's sideline activity was not self-employment separate and distinct from his full-time employment because he did not keep the proceeds for the work he did representing indigent clients. Ad-

dressing this argument, we observed in *Kress* that the checks were made out to the claimant, and his payment to the employer merely compensated the employer for work the claimant performed while on the employer's clock. We also noted that after he left the firm, the claimant retained those clients, not the employer. *"Most important, though,* Claimant's activities in respect to the [indigent] clients remained the same before, during and after his employment with Employer." *Id.* at 636 (emphasis added). Thus, we concluded that the claimant met the first element of the test to establish that his sideline activity is non-disqualifying.

With respect to the second factor of the analysis, whether the self-employment continued without substantial change, the Board focused on facts such as the claimant solely retaining fees, establishing a home office, renting a post-office box, creating letterhead and business cards, and obtaining malpractice insurance. However, citing *Dausch v. Unemployment Compensation Board of Review*, 725 A.2d 230, 232 n. 7 (Pa.Cmwlth.1999) ("In determining whether a substantial change has occurred in a sideline business, we have focused primarily on whether a claimant is working in an activity for significantly more hours than he did prior to separation"), we concluded in *Kress* that the claimant's testimony that his hours remained roughly the same—the only testimony concerning that issue—satisfied that prong of the test.

Subsequently, in *Risse v. Unemployment Compensation Board of Review*, 35 A.3d 79 (Pa.Cmwlth.2012), we reversed the Board's decision that the claimant's involvement in a sideline activity substantially changed where the Board relied solely on an increase in the claimant's earnings. In *Risse*, the claimant increased his hours from zero hours worked in 2007 and 2008 to approximately ten hours per week; the claimant's wages likewise increased from $3,750.00 in 2009 to $8000.00 in 2010. We concluded that "[e]ven though those changes are substantial increases in percentage terms, in the amount of money earned, and the periodic nature of that employment," *id.* at 82, in light of the facts that the claimant did not seek to expand his business, find new clients or engage in marketing activities, and only worked when he received a call from someone, the evidence established that the claimant's sideline business activity did not substantially change and, therefore, the claimant was not ineligible for benefits under section 402(h).

As in *Kress*, the only relevant evidence in this case reflects that Claimant engaged in his sideline activity for the same, minimal number of hours after his separation from Employer as he did prior to that separation. Pursuant to our decisions in *Risse* and *Kress*, we reject the Board's contentions that the mere fact that Claimant did not receive remuneration for his submitted work while he was working full-time for Employer is dispositive of whether he was engaged in a sideline activity prior to the termination of his full-time employment. To the contrary, our courts have long viewed claimants who engaged in business activities and the solicitation of clients as self-employed, regardless of whether the claimants received any income from these efforts. *LaChance v. Unemployment Compensation Board of Review*, 987 A.2d 167 (Pa.Cmwlth.2009); *Keslar v. Unemployment Compensation Board of Review*, 202 Pa.Super. 434, 195 A.2d 886 (1963).[5]

---

5. In *LaChance v. Unemployment Compensation Board of Review*, 987 A.2d 167 (Pa. Cmwlth.2009), we rejected the claimant's argument that the increase in time he spent on

Finally, the Board cites no authority for its assertion that the formality of the employment arrangement is highly significant to our determination. In this regard, we note that in analyzing whether a claimant was an employee or independent contractor, we have repeatedly held that the existence of an independent contractor agreement is not dispositive of the work relationship, *Jia v. Unemployment Compensation Board of Review,* 55 A.3d 545 (Pa.Cmwlth.2012), and that evidence of the parties' intent is less significant than the relationship in fact. *Id.* We apply the same reasoning here and conclude that the mere existence of a formal agreement is insufficient to support the Board's finding of a substantial change in Claimant's sideline activities.

The Board acknowledges that, in determining whether a substantial change has occurred in a sideline business, this Court has focused primarily on whether a claimant is working in the activity for significantly more hours than he did prior to his separation. *Risse; Kress.*[6] The only evidence presented on this issue was Claimant's testimony he devoted the same amount of time to his sideline activity after his separation from Employer as he did prior to that separation. Having rejected the Board's contentions that, as a matter of law, evidence of an undetermined change in income and the existence of a more formal work relationship compel a

different determination, we conclude that the Board erred in holding Claimant is ineligible for benefits under section 402(h) of the Law.

Accordingly, we reverse.

### ORDER

AND NOW, this 22nd day of January, 2013, the orders of the Unemployment Compensation Board of Review, dated December 23, 2011, are reversed.

---

activities such as calling, writing and networking in an effort to secure work for his company, from zero hours to twenty hours per week, did not constitute a substantial change in activities where the claimant generated no income from those activities. In *Keslar v. Unemployment Compensation Board of Review,* 202 Pa.Super. 434, 195 A.2d 886 (1963), the Superior Court held that section 402(h) of the Law precludes an award of benefits to a claimant who has engaged in business activities and was actively soliciting customers even though he was not receiving any income from those activities. The court

noted that this principle was "firmly established" by case law. *Id.*

**6.** *See also Quinn v. Unemployment Compensation Board of Review,* 67 Pa.Cmwlth. 172, 446 A.2d 714, 715 (1982), and *Higgins v. Unemployment Compensation Board of Review,* 45 Pa.Cmwlth. 509, 405 A.2d 1024, 1025 (1979), in which we held that an increase in hours from thirty to sixty per week and from ten to forty-five per week, respectively, constituted a substantial change in activity in the claimant's sideline business.