# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith Malzi,                                   :
            Petitioner                         :
                                               :    No. 712 C.D. 2016
            v.                                 :
                                               :    Submitted: October 21, 2016
Unemployment Compensation                      :
Board of Review,                               :
            Respondent                         :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                            FILED: April 12, 2017


Keith Malzi (Claimant) petitions, *pro se*, for review of the March 21, 2016 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision holding that Claimant was ineligible for benefits under section 402(h) of the Unemployment Compensation Law (Law)[1] and subject to a fault overpayment and penalty under sections 804(a) and 801(c) of the Law.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(h). Section 402(h) of the Law generally provides that an employee shall be ineligible for benefits for any week in which he is engaged in self-employment. This section includes an exception, known as the "sideline activity" exception, which permits a claimant to engage in self-employment, and remain eligible for unemployment compensation benefits if certain conditions are met. *LaChance v. Unemployment Compensation Board of Review*, 987 A.2d 167, 171 (Pa. Cmwlth. 2009).

[2] 43 P.S. §§874(a), 871(c), respectively.

Claimant worked full-time for Temple University (Employer). Around mid-February 2015, Claimant became aware that his job with Employer would be ending. On March 16, 2015, Claimant registered a business under the name Home Insite, LLC, a home care agency, with the Department of State and received a tax identification number. Claimant owned 100% of the business. Claimant opened a business bank account in April 2015. Claimant later registered Home Insite, LLC, with the Department of Health and was approved on May 17, 2015. Claimant hired his first employee for Home Insite, LLC, on June 23, 2015, and obtained its first client at the end of July 2015. (Board's Findings of Fact Nos. 1-2, 6-11.)

In the meantime, Claimant's job with Employer officially ended on June 30, 2015, due to a lack of work. Claimant filed for unemployment compensation benefits and was found eligible for a weekly amount of $573.00. The Department of Labor and Industry's Internal Audit Division (Audit Division) subsequently received information from its fraud website regarding Claimant's Home Insite, LLC business and the fact that he was collecting benefits while self-employed. The Audit Division initiated an investigation which revealed the facts above. (Board's Findings of Fact Nos. 3-5.)

The Department of Labor and Industry (Department) thereafter issued three notices of determination to Claimant. The first notice of determination concluded that Claimant was ineligible for benefits under section 402(h) of the Law as a result of his self-employment and the failure of such self-employment to qualify as a sideline business. The second notice of determination imposed a fault overpayment of $14,275.00 pursuant to section 804(a) of the Law. The third and final notice of determination imposed a 15% penalty of $2,141.25 pursuant to section

2

801(c) of the Law for knowingly failing to disclose information in order to obtain unemployment compensation benefits. *See* Record at Item No. 4.

Claimant appealed and a referee held a hearing on February 2, 2016. At this hearing, Bonnie Haas, an Audit and Investigations Specialist, testified on behalf of the Department. Ms. Haas stated that the Department received information on its fraud website that Claimant was receiving unemployment compensation benefits and also running a personal business, Home Insite, LLC. She was assigned to the case and began an investigation. Ms. Haas discovered that Claimant's business had been registered with the Department of State on March 16, 2015, and also with the Department of Health on an unknown date, with Claimant being listed as the sole owner. Upon search of a federal employer identification number connected to Home Insite, LLC, Ms. Haas learned that an unemployment account had been established for the business and wages were reported for the third quarter of 2015. She also was able to find an internet site for the business. (Notes of Testimony (N.T.) at 7-8.)

Ms. Haas met with Claimant on December 29, 2015, at which time he described laying the foundation for his business after learning that his job with Employer would be ending. Claimant provided Ms. Haas with bank records, which revealed that a business bank account was set up in April of 2015 and a significant amount of activity as of July 1, 2015, when he was still receiving unemployment compensation benefits. Ms. Haas stated that Claimant advised of hiring his first employee in July 2015 and that he had twenty-two employees at the time of the meeting. Ms. Haas noted that all business calls are received at Claimant's residence, that he answers the phones, and that he is available twenty-four hours a day, seven days a week. Ms. Haas described Claimant's participation in the business as

3

increasing significantly after he became unemployed and had received the necessary approvals from the Department of Health to operate. (N.T. at 9-10.)

Claimant testified as to his separation from employment with Employer, noting that while he actually stopped working on June 7, 2015, Employer paid monthly and he received a payment for the full month of June. Claimant explained that his contract with Employer ended as of June 30, 2015. Claimant acknowledged that he received approval from the Department of Health for Home Insite, LLC, on May 17, 2015, and hired his first employee on June 23, 2015, while he was still under contract with Employer. Claimant noted that his business obtained its first client at the end of July 2015. By August of 2015, Claimant stated that his business had four clients and nineteen employees. (N.T. at 10-14.)

Claimant admitted that when he filed his claim for unemployment compensation benefits he answered no in response to a question asking if he was engaged in self-employment. Claimant explained that he answered no because he assumed that self-employment meant that he was receiving actual income and he was not receiving income from his business at that point in time. Claimant also admitted that for each bi-weekly claim he submitted, he answered no when asked if he had worked during the week, explaining that he believed himself to be available for full-time work and went on many job interviews but was not offered a job. Further, Claimant acknowledged receiving the Unemployment Compensation (UC) Handbook and reviewing the discussion of sideline businesses but he did not believe that he had increased participation in his own business at the time. Claimant described his business as a fallback in case he could not find another job. Claimant reiterated that he continued looking for work throughout the process of setting up his personal business. (N.T. at 14-16.)

4

Regarding his business, Claimant testified that he hired an employee to handle scheduling and other administrative duties, but that person was let go in November 2015 and likely reported him to the Department's fraud website. He described his business as providing in-home, non-medical care to clients. He noted that the company's website as well as business cards and brochures were prepared prior to cessation of his work with Employer. Upon questioning from Ms. Haas, Claimant stated that he set up his business through an online legal website and that he uses a computer program to do the payroll. He noted that he began drafting a business plan and necessary client forms in February 2015. He acknowledged that the business received its first client payment of $720.00 on July 27, 2015, and he did not report the same to the Department. (N.T. at 17-26.)

By decision dated February 4, 2016, the referee affirmed each of the three notices of determination issued by the Department. Claimant appealed to the Board. By decision dated March 21, 2016, the Board affirmed the decision of the referee. The Board concluded that Claimant was ineligible for benefits under section 402(h) of the Law. The Board noted that Claimant received benefits for the period from June 20, 2015, through December 5, 2015, all of which were received subsequent to Claimant taking positive steps of establishing an independent business enterprise. Additionally, the Board concluded that Claimant was not entitled to the sideline activity exception because the record establishes that Claimant's activities in his business increased after his termination. Further, the Board concluded that Claimant's error or omission in failing to report his work with Home Insite, LLC, warranted the imposition of a fault overpayment and his failure to disclose a material fact for the purpose of increasing his compensation warranted the imposition of a 15% penalty.

5

On appeal to this Court,[3] Claimant argues that the Board erred in concluding that he was self-employed under section 402(h) of the Law and not subject to the "sideline activity" exception. More specifically, Claimant argues that the record lacks evidence that his participation in his sideline business increased after separation from his employment with Employer.[4] We disagree.

Section 402(h) of the Law provides that an employee shall be ineligible for compensation benefits in any week:

> In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

43 P.S. §802(h).

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 n.4 (Pa. Cmwlth. 2010).

[4] In his brief, Claimant appears to question whether the Board considered the timeframe during which he initiated his sideline business and his level of activity both before and after his layoff. However, a review of the Board's opinion and the testimony relied on by the Board, which is described above and summarized again below, makes it clear that the Board was astutely aware of this timeframe and Claimant's actions during the same.

6

The Law does not expressly define the term "self-employment," but, in determining whether a claimant is engaged in self-employment, our courts have looked at whether the claimant engaged in positive acts to establish an independent business venture. *Leary v. Unemployment Compensation Board of Review*, 322 A.2d 749, 750 (Pa. Cmwlth. 1974). In addition, claimants who engaged in business and the solicitation of clients have been viewed as self-employed, regardless of whether the claimants received any income from those efforts. *LaChance*, 987 A.2d at 170 (citing *Keslar v. Unemployment Compensation Board of Review*, 195 A.2d 886, 886 (Pa. Super. 1963)). "Normally the employer has the burden of proving that a claimant is self-employed, but where the bureau acts on its own in suspending benefits because of self-employment, the bureau carries the burden." *Teets v. Unemployment Compensation Board of Review*, 615 A.2d 987, 989 (Pa. Cmwlth. 1992).

Nevertheless, as noted above, the "sideline activity" exception contained within section 402(h) permits a claimant to engage in self-employment, and remain eligible for unemployment compensation benefits, if the following conditions are met: (1) the self-employment activity precedes valid separation from full-time work; (2) the self-employment activity continues without substantial change after separation; (3) the claimant remains available for full-time work after separation; and (4) the self-employment activity is not the primary source of the claimant's livelihood. *LaChance*, 987 A.2d at 171. "A claimant who wishes to fall within the exception bears the burden of showing that *all* of these requirements are met." *Id.* (emphasis in original).

The focus in this case lies exclusively with the second prong of the "sideline activity" exception. Claimant relies on this Court's prior decisions in *Risse*

7

*v. Unemployment Compensation Board of Review*, 35 A.3d 79 (Pa. Cmwlth. 2015), *Kress v. Unemployment Compensation Board of Review*, 23 A.3d 632 (Pa. Cmwlth. 2011), *appeal denied*, 47 A.3d 849 (Pa. 2012), and *Dausch v. Unemployment Compensation Board of Review*, 725 A.2d 230 (Pa. Cmwlth. 1999), in support of his argument that his self-employment activity did not increase following his separation from employment. However, Claimant's reliance is misplaced as these cases are factually distinguishable from the present case.

In *Risse*, the claimant maintained a sideline business for more than 25 years and throughout the course of his employment with his employer. The claimant received no income from his sideline business in 2007 and 2008 because he was traveling too much for his employer. After his termination in October 2009, the claimant applied for and received unemployment compensation benefits. These benefits were suspended in October 2010 based upon the claimant's contract to provide consulting services for a political campaign. This consulting work ended one month later and the claimant sought resumption of his benefits. However, a local service center denied his request, concluding that he was self-employed and ineligible for the same. The claimant appealed and a referee held a hearing. At the hearing, the claimant testified that, following his termination, he began working approximately ten hours per week in his sideline business, earning $3,720.00 in 2009 and $8,000.00 in 2010. During this time period, he also testified that he did not seek to expand the business, go out and seek new clients, do any marketing, hire any employees, or get an office, and he only worked when he received a call from someone.

The referee found that Claimant was ineligible for benefits under section 402(h) because his self-employment had substantially changed as his income from his sideline business had more than doubled from 2009 to 2010. The claimant appealed

to the Board, but the Board affirmed the referee's decision. On further appeal, this Court reversed, holding that even though the claimant had "substantial increases in percentage terms, in the amount of money earned, and the periodic nature of that employment, those increases are not substantial to establish that he was transitioning that sideline activity to full-time employment." *Id.* at 82. Further, we relied on the facts that the claimant did not seek to expand his sideline business, did not go out and seek new clients, did no marketing, and only worked when he received a call from someone, in concluding that his sideline business had not substantially changed.

In *Kress*, the claimant was a lawyer who maintained a sideline business representing indigent defendants under the Criminal Justice Act (CJA), 18 U.S.C. §3006A, even while he was employed by a law firm. The checks he received were made out to the claimant, not the law firm, and payment to the law firm for the claimant's CJA work was nothing more than a mutual agreement between the claimant and the law firm. After the claimant was laid off by the law firm, the claimant retained the CJA clients. He applied for unemployment compensation benefits and the Department determined that he was not disqualified from benefits under section 402(h) of the Law because his business qualified as a sideline business. The employer appealed and a referee held a hearing. The claimant testified that he had been able and available for full-time work and had not engaged in any other type of employment since his layoff from the employer. He also stated that there had not been any increase in the volume of his sideline employment; he did not take any other clients from the employer other than the CJA clients; he did not engage in any advertising; he did not rent space; and he did not solicit clients.

Nevertheless, the referee concluded that the claimant was self-employed and ineligible for benefits under section 402(h). The claimant appealed to the Board,

9

but the Board affirmed the referee's decision, concluding that the claimant was engaged in the independent practice of law. The Board found that the claimant's self-employment activity ceased once he became an employee of the law firm and he was acting as an employee when he performed his services related to the CJA clients. The Board noted that even if it concluded that the claimant's self-employment continued during his full-time employment with the law firm, the sideline activity did undergo substantial changes, such as the CJA payments previously directed to the employer were paid to the claimant; the claimant purchased his own malpractice insurance, created business cards and letterhead, and rented a post office box.

On further appeal, this Court reversed, reasoning that the claimant began representing the CJA clients before he was hired by the law firm, continued to do so during his employment, the checks continued to be made out to the claimant, and he retained those clients following his layoff. In other words, we noted that the claimant's activities with respect to the CJA clients remained the same before, during and after his employment with the law firm. More importantly, with regard to the second prong of the "sideline activity" exception and claimant's activities following his layoff, we described the claimant's actions following his layoff as mere preparations to expand his sideline business and stressed that the focus of this prong is the number of hours worked. We noted that the only testimony in that regard was from the claimant who stated that his CJA workload remained roughly the same after his layoff. Thus, we held that the claimant satisfied this prong. Finally, we concluded that the claimant met the third and fourth prongs because he remained available for full-time employment, was looking for a job at a new law firm, and the sideline job was not a primary source of his income.

In *Dausch*, the claimant was a licensed attorney and a certified public accountant who maintained a sideline legal and accounting practice throughout the course of his employment with the employer. Following a layoff, the claimant continued his sideline business and began receiving unemployment compensation benefits, which were to terminate on November 4, 1995. In October 1995, since his search for a job had to that point proved unsuccessful, the claimant leased office space in the hope of expanding his sideline business into a business that could support his family. During that month, the claimant painted the walls and shelving of the leased office space, refinished furniture and moved it into the office, and installed a phone system. The claimant also arranged for advertisements of his business to appear in November issues of newspapers and magazines and began occupying the office space on November 10, 1995.

Following a tip received by its fraud hotline, the Department commenced an investigation of the claimant's activities and ultimately issued determinations disapproving benefits and imposing a fault overpayment and penalties. The claimant appealed and the referee held a hearing. The referee issued a decision affirming the Department's determinations, concluding that the claimant had failed to meet the second prong of "sideline activity" exception and had become self-employed within the meaning of Section 402(h) in October 1995 when he took possession of his office. The claimant appealed to the Board, but the Board affirmed.

On further appeal, this Court reversed, concluding that mere preparations undertaken to expand a sideline business during the final month of receipt of unemployment compensation benefits did not constitute a substantial change in the sideline business. We noted that the record lacked any evidence that the claimant actually performed any legal or accounting services during October or early

11

November 1995; that he even worked from the office space prior to the termination of his benefits; or that he increased solicitation of business or advertisement of the business prior to termination. Rather, we noted that the claimant placed advertisements that would not run until after his benefits had terminated. We reasoned that "[t]o require individuals in claimant's position to wait until their benefits have terminated to begin preparing to support themselves and their families is unrealistic and counterproductive." *Dausch*, 725 A.2d at 232.

Unlike the claimants in *Risse*, *Kress*, and *Dausch*, Claimant here had completed his preparations relating to his sideline business prior to his layoff from Employer in the event that he could not find another job and this business could become his primary source of income. While Claimant points to his testimony that his activities in his sideline business did not increase following his layoff, the Board did not credit Claimant's testimony.[5] Instead, the Board credited the testimony of Ms. Haas which reflected a significant increase in Claimant's sideline business following his layoff on June 7, 2015. Indeed, Ms. Haas testified that her investigation revealed that Home Insite, LLC, hired its first employee on June 23, 2015, obtained its first client at the end of July 2015, reported wages for the third quarter of 2015, solicited business through a website, and had twenty-two employees as of the date of their meeting on December 29, 2015. Additionally, Ms. Haas testified that Claimant's bank records reflected a significant amount of activity as of July 1, 2015, when he was still receiving unemployment compensation benefits. Further, Ms. Haas testified that all business calls are received at Claimant's residence, that Claimant

---

[5] In unemployment compensation proceedings, the Board is the ultimate factfinder, empowered to make determinations as to witness credibility and conflicting evidence. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385 (Pa. 1985).

12

answers the phones, and that he is available twenty-four hours a day, seven days a week. In other words, Claimant's sideline business became fully operational following his layoff.

This credible testimony from Ms. Haas, coupled with Claimant's own admissions to the revelations she discovered, renders the present matter factually distinguishable from *Risse*, *Kress*, and *Dausch*, and establishes a substantial change in Claimant's sideline business following his layoff. Further, this testimony supports the Board conclusions that Claimant was self-employed under section 402(h) of the Law and not subject to the "sideline activity" exception.

Claimant next argues that the Board erred in assessing a fault overpayment and penalty because the Law is ambiguous with respect to self-employment and the "sideline activity" exception. Again, we disagree.

Section 804(a) of the Law addresses fault overpayments, providing, in pertinent part, as follows:

> Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue.
> . . .

43 P.S. §874(a). This Court recently reiterated that the term "fault" in this section "connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches." *Castello v. Unemployment Compensation Board of Review*, 86 A.3d 294, 298 (Pa. Cmwlth. 2013) (citing *Amspacher v. Unemployment Compensation Board of Review*, 479 A.2d 688, 691 (Pa. Cmwlth. 1984)). To find fault, the Board must make findings regarding a claimant's state of mind. *Fugh v. Unemployment Compensation*

13

*Board of Review*, ___ A.3d ___ (Pa. Cmwlth., No. 129 C.D. 2016, filed January 18, 2017) (Slip op. at 7.)

Section 801(c) of the Law addresses penalties, providing, in pertinent part, as follows:

> Whoever makes a false statement knowing it to be false, or knowingly fails to disclose a material fact to obtain or increase compensation or other payment under this act . . . and as a result receives compensation to which he is not entitled shall be liable to pay to the Unemployment Compensation Fund a sum equal to fifteen per centum (15%) of the amount of the compensation.

43 P.S. §871(c).

Contrary to Claimant's argument, section 402(h) of the Law expressly provides that an employee shall be ineligible for compensation benefits in any week in which he is engaged in self-employment. Section 402(h) further provides for an exception to this prohibition when certain conditions are met, the so called "sideline activity" exception. Moreover, we note that the UC Handbook, which Claimant acknowledged receiving, includes a section entitled "Self Employment" and explains that:

> If you find work as an independent contractor (meaning that you are self employed), or take steps to start your own business, you are not eligible for benefits even if your business is not profitable. However, there is an exception for a "sideline" activity. Participating in a sideline business that began while you were working full time for your employer is not disqualifying if:
>
> •you are able and available for full-time work,
> •you do not substantially increase your participation in the business, and
> •the business is not the primary source of your livelihood.

14

(UC Handbook at 12.) That section ends with the following caution, "**IMPORTANT: Notify the UC service center immediately if you are engaged in any type of self employment.**" *Id.* (emphasis in original). Thus, we disagree with Claimant's characterization of the Law as ambiguous with respect to self-employment and the "sideline activity" exception.

Moreover, the Board in this case specifically found that Claimant informed the Department that he was not self-employed at the time he filed for benefits and did not report his personal business, Home Insite, LLC, at that time. Indeed, the Department did not discover Claimant's self-employment activities until it received a tip through its fraud website. Yet, the record reveals that Claimant began his business in March 2015 and actively pursued becoming operational in the succeeding months. Claimant's business ultimately reached operational stage around the same time he initially applied for benefits, yet he never reported the same to the Department and, in fact, continually denied being self-employed when filing his bi-weekly claims. Based on these facts, the Board concluded that Claimant's error or omission in failing to report his work with Home Insite, LLC, warrants the imposition of a fault overpayment, and his knowing failure to disclose a material fact for the purpose of increasing his compensation warranted imposition of a 15% penalty. We see no error on the part of the Board in reaching these conclusions.

Accordingly, the order of the Board is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge


15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith Malzi,                              :
                    Petitioner            :
                                          :   No.  712 C.D. 2016
          v.                              :
                                          :
Unemployment Compensation                 :
Board of Review,                          :
                    Respondent            :

## *ORDER*

AND NOW, this 12th day of April, 2017, the order of the Unemployment Compensation Board of Review, dated March 21, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge