615 A.2d 987

**Marie C. TEETS, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 20, 1991.

Decided Sept. 10, 1992.

William H. Mendlow, for petitioner.

John E. Herzog, Asst. Counsel and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before COLINS, and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Marie Teets (claimant) was laid off from her employment with Trans World Airlines (employer) on October 19, 1990, after working there for more than twenty-four years. Claimant filed for unemployment compensation benefits with the Bureau of Unemployment Compensation Benefits and Allowances (bureau) and initially received benefits. The bureau later suspended benefits based on a determination that claimant was self-employed and therefore not entitled to benefits under section 402(h) of the Unemployment Compensation Law

(Law).[1] Claimant appealed to a referee who made the following findings of fact:

1. Claimant was previously employed by Trans World Airlines for more than 24 years as an account executive and her last day of work was on or about October 19, 1990; her separation is not at issue in this appeal.

2. In September 1990 the claimant responded to an advertisement offering information on the subject of 'Eternal Youth'.

3. In response to her request for information, the claimant received a video tape but as of November 7, 1991 [sic] she had not viewed the tape.

4. On November 7, 1990 the claimant at the invitation of a representative of Nu Skin Company attended a meeting at which the company presented information about skin care products and solicited those in attendance to join in a pyramidal sales program.

5. Around the end of November the claimant signed an agreement to be a distributor for Nu Skin Products so that she could buy those products for herself and also hopefully supplement her income under the employer's pyramidal sales program.

6. Along with signing the above mentioned agreement, the claimant invested approximately $250 to purchase a sales kit.

7. Since the time that she signed the distributor's agreement with Nu Skin the claimant has engaged in efforts to enlist others in the pyramidal sales program.

8. Claimant received no income from her activities with Nu Skin until February 1991 when she received a payment of less than $6 as a commission on a sale of a product.

9. The claimant was aware of her obligation to report any earnings she may have had from sales of Nu Skin but was not aware that she had an obligation to report her involvement in that activity prior to receipt of any commissions.

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h).

10. Through no fault of her own, claimant received $2,258 in unemployment benefits to which she was not entitled.

The referee's decision affirmed the bureau's suspension of benefits for the weeks ending December 8, 1990, through February 9, 1991, and ordered that a nonfault overpayment was to be recouped under section 804(b)(1) of the Law.[2] Claimant appealed to the Unemployment Compensation Board of Review which affirmed.

■■ Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987). Normally the employer has the burden of proving that a claimant is self-employed, but where the bureau acts on its own in suspending benefits because of self-employment, the bureau carries the burden. *Roche v. Unemployment Compensation Board of Review*, 94 Pa.Commonwealth Ct. 546, 503 A.2d 1103 (1986).

■■ Claimant argues that her activities do not meet the definition of self-employment. Section 402 of the Law reads, in part:

An employe shall be ineligible for compensation for any week—

. . . .

(h) In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in 'employment' as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of

2. 43 P.S. § 874(b)(1). Under this section, claimant is not liable to repay the overpayment, but that amount may be deducted from future compensation.

livelihood. Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

43 P.S. § 802. Even though the referee concluded that claimant's participation in the Nu Skin program was only a "sideline activity," he also concluded that claimant must be deemed to be self-employed. This decision was apparently based on the fact that claimant did not sign the agreement with Nu Skin until after she was laid off, thus excluding her from the exception in subsection (h) for activities undertaken while still employed full-time. However, the fact that an activity which may generate a limited amount of income is not undertaken while a claimant is still employed does not automatically make it "self-employment".

The term "self-employment" is not statutorily defined, and in considering this issue in the past we have looked for guidance to language in section 4($l$)(2)(B) [3] relating to the definition of employment. *Unemployment Compensation Board of Review v. Kessler*, 27 Pa.Commonwealth Ct. 1, 365 A.2d 459 (1976). In *Buchanan v. Unemployment Compensation Board of Review*, 135 Pa.Commonwealth Ct. 567, 581 A.2d 1005 (1990), we reversed a decision denying benefits under section 402(h) where the claimant sold jewelry at a weekly flea market after he was terminated from his full-time job. After reviewing relevant caselaw, the court engaged in the following analysis:

> The claimant in this case did not form a corporation for the purpose of selling jewelry. He did not advertise, list a telephone number for this alleged business nor did he obtain insurance for his activity. The claimant testified at the

---

**3.** 43 P.S. § 753(1)(2)(B). This section reads in part:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

hearing before the referee that he had no intent to sell jewelry at the flea market on a permanent basis; the activity was one on the side to make some extra money. If the facts of this case had been that the claimant was selling jewelry on a more consistent basis, or that he was moving from flea market to flea market or was selling also out of his home, we would be more apt to find that he had embarked on an independent business venture. We decline, however, to find that the act of setting up a booth at a weekly flea market constitutes customary engagement in an independently established trade, occupation, profession or business under Section 4(1)(2)(B) of the Law.

*Id.* at 573–74, 581 A.2d at 1009. We believe the present case is analogous to *Buchanan*. The referee himself concluded that claimant's actions were only a sideline activity. There was no finding and no evidence presented as to the level of time and effort claimant put into this project. Claimant spent only $250 on a sales kit, whereas in *Buchanan* the claimant invested $2,038 in tools and supplies. Claimant received less than $6 in income from her activities. Under these facts, and after reviewing the record, we conclude as a matter of law that claimant was not engaged in self-employment so as to disqualify her from receiving benefits.

We will therefore reverse the order of the board.

## ORDER

NOW, this 10th day of September, 1992, the order of the Unemployment Compensation Board of Review, dated June 19, 1991, at No. B–291121, is reversed.