IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Three Rivers Transportation, : 
              Petitioner : 
               : 
      v. : Nos. 822 C.D. 2019 and 823 C.D. 2019
               : SUBMITTED: May 15, 2020
Unemployment Compensation Board : 
of Review, : 
              Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                             FILED: July 10, 2020

In these consolidated appeals, Three Rivers Transportation (Three Rivers) petitions for review of two June 14, 2019 Orders of the Unemployment Compensation Board of Review (Board) affirming a Referee's decisions finding Jackeline I. Santiago (Claimant) not ineligible for unemployment compensation (UC) benefits. In Appeal Number 822 C.D. 2019, the Board concluded that Claimant was not self-employed as an independent contractor under Section 402(h) of the Unemployment Compensation Law (Law).[1] In Appeal Number 823 C.D.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h). Section 402(h) of the Law provides that an employee "shall be ineligible for compensation for any week . . . [i]n which [she] is engaged in self-employment." 43 P.S. § 802(h). The Law does not define "self-employment." However, Section 4(*l*)(2)(B) of the Law defines "employment" as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to [the Law], unless and until it is shown to the satisfaction of the [D]epartment [of Labor and Industry (Department)] that – (a) *such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact*; and (b) as to such

2019, the Board concluded that Claimant was not discharged from work for willful misconduct under Section 402(e) of the Law.[2]  For the reasons that follow, we affirm both Orders.

## Background

From February 5, 2014 through October 11, 2018, Claimant was employed as a full-time stock room supervisor for Clean Rental Services, Inc. (Clean Rental). Record (R.) Item No. 1; Notes of Testimony (N.T.), 4/11/19, at 20-21, 27.  Following her separation from employment with Clean Rental, Claimant filed an application for UC benefits effective October 14, 2018, establishing a weekly benefit amount of $398 and a partial benefit credit of $120.  Finding of Fact (F.F.) No. 1.[3]

Shortly after filing her initial UC claim, on October 15, 2018, Claimant entered into an Independent Contractor Agreement with Three Rivers.  F.F. No. 2. Three Rivers contracts with various health care providers to provide transportation services to clients who need transportation to and from medical appointments. F.F. No. 3.

Claimant provided her work availability to Three Rivers, and Three Rivers assigned Claimant trips via email based on her availability.  F.F. No. 4.  Claimant

---

services *such individual is customarily engaged in an independently established trade, occupation, profession or business*.

43 P.S. § 753(*l*)(2)(B) (emphasis added).

[2] Section 402(e) of the Law states that an employee shall be ineligible for UC benefits for any week "[i]n which [her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work."  43 P.S. § 802(e).

[3] The record shows that Claimant was initially denied UC benefits for her claim relating to her separation from Clean Rental, but a Referee reversed that decision and Claimant began collecting UC benefits.  *See* R. Item No. 1.; N.T., 4/11/19, at 20.  That ruling is not at issue in this appeal.

used her own vehicle and personal cell phone to perform transportation services for Three Rivers. F.F. No. 5. Claimant was free to accept or decline trips with no repercussions. F.F. No. 6. Claimant was required to have basic first aid and CPR training and was not permitted to subcontract her work to others. F.F. No. 7.

Three Rivers paid Claimant a flat rate of $30 for each round trip. F.F. No. 8; N.T., 4/11/19, at 17. The $30 flat rate included $20 for contract labor and $10 for car rental, to pay Claimant for the use of her vehicle. Bd.'s F.F. No. 8. Three Rivers also reimbursed Claimant for fuel, tolls, and parking and paid Claimant a $5 no-show fee if a client failed to show up for a scheduled trip. F.F. No. 9. Three Rivers did not withhold federal, state, or local taxes from Claimant's compensation and gave her a Form 1099 to report non-employee compensation. F.F. No. 10. Three Rivers did not provide Claimant with any benefits such as health care or a pension. F.F. No. 11.

When filing her biweekly claims for UC benefits, Claimant reported her work and the compensation she received from Three Rivers. F.F. No. 12; *see* R. Item No. 1. Claimant continued to look and apply for a different job while she performed services for Three Rivers. Bd.'s Order, 6/14/19, at 1.[4]

On January 31, 2019, Claimant called Three Rivers' Office Manager and informed her that she was taking the day off because she had already had an accident and the roads were too slippery to be out driving. Bd.'s F.F. No. 13. Three Rivers did not offer Claimant any driving assignments after that date. F.F. No. 14. The UC claim records show that Claimant contacted the Department on February 15, 2019

---

[4] Although the Board adopted the Referee's findings of fact in their entirety, Bd.'s Order, 6/14/19, at 1, the Board made this additional finding of fact specifically relating to the Section 402(h) claim.

and reported that she had been discharged by Three Rivers "due to no longer having transportation." R. Item No. 1.

On March 7, 2019, the local UC Service Center issued two Notices of Determination. The first Notice of Determination related to Claimant's separation from employment with Three Rivers and applied to claim week ending February 2, 2019. R. Item No. 4. In that Notice, the Service Center found that Three Rivers discharged Claimant for absenteeism. *Id.* However, because it found that Claimant was not previously warned about her attendance, the Service Center determined that she was not discharged for willful misconduct and, thus, she was not ineligible for UC benefits under Section 402(e) of the Law. *Id.*

The second Notice of Determination related to Claimant's separation from employment with Clean Rental and applied to waiting week ending October 20, 2018 and claim weeks ending October 27, 2018 through February 23, 2019. *Id.* Although Three Rivers is identified as Claimant's employer on this Notice, the Notice bears an "Application for Benefits" date of October 14, 2018, which is the date Claimant initially filed for UC benefits after her separation from Clean Rental. *Id.*; *see* R. Item No. 1.

In the second Notice of Determination, the Service Center found that although Three Rivers considered Claimant to be an independent contractor, Claimant was not free from Three Rivers' direction or control in the performance of her job. *Id.* Because it found that Claimant was not self-employed, the Service Center determined that she was eligible for UC benefits under Section 402(h) of the Law. *Id.*

4

Three Rivers appealed from both Notices of Determination to the Referee, who held a telephone hearing on April 11, 2019.[5] Three Rivers presented the testimony of its General Manager, Dawn Lilly, and Claimant testified on her own behalf. At the outset of the hearing, the Referee stated that the following issues would be addressed at the hearing: (1) whether Claimant was discharged from work for willful misconduct under Section 402(e) of the Law; and (2) whether Claimant was engaged in disqualifying self-employment under Section 402(h) of the Law. N.T., 4/11/19, at 7.

Following the hearing, the Referee entered two Orders affirming the Service Center's Notices of Determination. With regard to the Section 402(e) claim, the Referee concluded:

> *[C]laimant provided credible test[imony] to demonstrate that [Three Rivers] stopped sending her assignments after [Claimant] called off on January 31, 2019 due to weather conditions.* [Three Rivers] argues that [C]laimant was not discharged and that work [wa]s available. *There is no evidence of record to demonstrate willful misconduct on the part of [C]laimant* and [C]laimant's request for UC benefits cannot be denied under Section 402(e) of the Law.

Ref.'s Order, 4/19/19, at 3 (emphasis added). With regard to the Section 402(h) claim, the Referee concluded:

> [C]laimant was free from direction and control over the performance of her services for [Three Rivers]. *There is no competent evidence of record, however, to show that [C]laimant was customarily engaged in an independently established trade, occupation, profession or business. There is no evidence of record to demonstrate that [C]laimant performed similar services outside of her role as independent contractor with [Three Rivers].* [C]laimant was not at risk for a

[5] The Referee conducted the hearing by telephone because the Referee and Employer's witness were located in Pittsburgh and Claimant resided in Philadelphia.

5

business loss. [C]laimant received compensation based on payments from [Three Rivers] for contract labor and rental of her vehicle and reimbursed for expenses including fuel, tolls, and parking and paid a $5 no-show fee if a client did not show for a scheduled transportation. As [C]laimant was not customarily engaged in an independently established trade, occupation, profession or business, [C]laimant's request for UC benefits cannot be denied in accordance with Section 402(h) of the Law.

Ref.'s Order, 4/19/19, at 3 (emphasis added).

Three Rivers appealed to the Board, which affirmed the Referee's decisions. The Board expressly adopted and incorporated the Referee's findings of fact and conclusions of law with regard to the Section 402(e) claim. With regard to the Section 402(h) claim, the Board adopted and incorporated the Referee's findings of fact and conclusions of law and added the following additional finding of fact: "[C]laimant continued to look and apply for a different job while performing services for [Three Rivers]." Bd.'s Order, 6/14/19, at 1. On the issue of self-employment, the Board further concluded:

> [T]he Board supplements the Referee['s] analysis by pointing out that this case is substantially similar to the Commonwealth Court's recent decision in *Lowman v. Unemployment Comp[ensation] B[oard] of Review*, 178 A.3d 896, 901 (Pa. Cmwlth.) [(*en banc*)], *appeal granted*, 199 A.3d 862 (Pa. 2018). [In *Lowman*], the [Commonwealth C]ourt held that a claimant who accepted driving assignments from Uber [Technologies, Inc. (Uber)], following his loss of employment [in the behavioral health field], was not disqualified under Section 402(h) of the Law, *absent evidence that the claimant took a positive step to embark on an independent trade or business. The claimant's acceptance of assignments from Uber did not reflect such a positive step.* Although the *Lowman* case is presently on appeal, it remains good law, which must be followed by the Board, unless it is reversed by the Pennsylvania Supreme Court.

6

*Id.* (emphasis added).  Employer now petitions for review of both Orders.[6]

<u>Analysis</u>

**1.  Section 402(h) Claim (Appeal No. 822 C.D. 2019)**

Three Rivers argues that the Board erred in concluding that Claimant was not disqualified from receiving UC benefits under Section 402(h) of the Law.  Specifically, Three Rivers contends that Claimant was self-employed as an independent contractor and that the Board misapplied *Lowman* in reaching its decision.  We disagree.

It is well settled that "an individual receiving wages for his services is presumed to be an employee, and the employer bears a heavy burden to overcome that presumption."  *Jia v. Unemployment Comp. Bd. of Review*, 55 A.3d 545, 548 (Pa. Cmwlth. 2012).  To overcome the statutory presumption of employment, the employer must show that the claimant's work was performed for others, not just for the employer, as part of an independent trade, occupation, or business.  *Id.* at 549.

We agree with the Board that this case is substantially similar to our Court's recent decision in *Lowman*.  In *Lowman*, after his separation from employment as a behavioral health specialist, the claimant began receiving UC benefits.  178 A.3d at 898.  Thereafter, he signed a contract with a subsidiary of Uber to provide transportation services to customers who requested rides through Uber's mobile phone application.  *Id.*  The Board found that, pursuant to the contract, the claimant "used his own mobile phone and vehicle[,] paid for the vehicle maintenance and fuel[,] was required to carry insurance, a driver license, and vehicle registration[,]

---

[6] Our scope of review is limited to determining whether the necessary factual findings are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.  Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

7

and set his own hours" and the "[c]laimant was able to accept or refuse assignments from Uber and [was] allowed to drive for others." *Id.* at 899. The Board also found that the claimant worked for Uber most days each week, earning approximately $350 per week. *Id.*

To determine whether the claimant was an employee or independent contractor, the Board applied the following two-prong test set forth in Section 4(*l*)(2)(B) of the Law: (1) whether the claimant was free from control or direction in the performance of his service; and (2) whether the claimant was customarily engaged in an independently established trade, occupation or business. *Lowman*, 178 A.3d at 899. The Board concluded, based on the above factual findings, that the claimant's work for Uber satisfied both prongs. *Id.* Thus, the Board denied UC benefits under Section 402(h) of the Law because, after reviewing the entire record, it concluded that the claimant was "self-employed and not just trying to earn some extra money on the side." *Id.*

On appeal, an *en banc* panel of this Court reversed the Board's decision. We held that where a claimant is already receiving UC benefits based on a separation from employment with a different employer, "*the question . . . is whether [the c]laimant took a positive step to embark on an independent trade or business*, thereby disqualifying himself for benefits." *Id.* at 902 (emphasis added). In such a situation, we rejected the use of Section 4(*l*)(2)(B)'s two-prong analysis, instead adopting the "positive step" analysis applied in *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005 (Pa. Cmwlth. 1990), and *Teets v. Unemployment Compensation Board of Review*, 615 A.2d 987 (Pa. Cmwlth. 1992).[7]

---

[7] In *Buchanan*, the claimant began receiving UC benefits after losing his full-time job as an assistant finance manager at a car dealership. 581 A.2d at 1006. Subsequently, the claimant

We determined that the issue in *Lowman* was "the same [as the issue] before th[is] Court in *Buchanan* and *Teets*, which is *whether [the c]laimant, by driving for Uber after losing his position in the behavioral health field, lost his eligibility for [UC] benefits by becoming self-employed*." *Lowman*, 178 A.3d at 902 (emphasis added). We noted that the Board's findings, "which focused solely on [the c]laimant's relationship with Uber, d[id] not reflect 'a positive step' toward [the] establishment of an independent business." *Id.* at 903. There was no evidence that the claimant "took any steps to hold himself out as a commercial driver or prepare for a commercial driving business." *Id.* at 899. We further explained:

> [The] Department presented no evidence to show the "level of time and effort" [that the c]laimant put into his alleged "business." [The c]laimant did not have business cards or advertise his driving services independent of Uber. Simply, his actions did not reflect "an entrepreneurial spirit" or "intentions of starting a new business [or] trade."

---

"bought spools of gold chain to make necklaces and bracelets for sale at a weekly flea market," "invested $2,038.00 in tools and supplies," and spent "$16.00 as rent for his booth." *Id.* at 1007. However, even though the claimant had engaged in these activities, he did not incorporate, advertise his business, or obtain insurance. This Court held that "the act of setting up a booth at a weekly flea market" in order to sell homemade jewelry did not constitute "customary engagement in an independently established trade, occupation, profession or business under Section 4(*l*)(2)(B) of the Law." *Id.* at 1009.

In *Teets*, after the claimant was laid off from her position as an airline account executive, she signed a distributor agreement with a skincare company, invested $250.00 in a sales kit, and made efforts to enlist others in the company's sales program. 615 A.2d at 988. Relying on *Buchanan*, this Court reversed the Board's denial of UC benefits, holding that the claimant's limited activities were simply a "sideline activity" and did not amount to disqualifying self-employment under Section 402(h) of the Law. *Id.* at 990. In doing so, we stated that "the fact that an activity which may generate a limited amount of income is not undertaken while a claimant is still employed does not automatically make it 'self-employment.'" *Id.* at 989.

9

*Id.* (internal citations omitted). Therefore, we held that because the Department "did not demonstrate that [the c]laimant intended to enter into an independent business venture by becoming an Uber driver[,] . . . he remain[ed] eligible for [UC] benefits as a matter of law." *Id.* at 898.[8]

Applying *Lowman*'s reasoning to the facts of this case, we conclude that Claimant did not engage in disqualifying self-employment under Section 402(h) of the Law. Here, as in *Lowman*, Claimant's prior full-time job with Clean Rental was unrelated to the work she subsequently performed for Three Rivers. Claimant had already filed a UC claim based on her separation from employment with Clean Rental when she entered the contract with Three Rivers, and she began collecting UC benefits shortly thereafter. *See* R. Item No. 1.; N.T., 4/11/19, at 20.

Moreover, there was no evidence that Claimant provided transportation services for any other entity, advertised her driving services independent of Three Rivers, or created her own business cards advertising her services. In fact, on the Claimant Questionnaire submitted to the Department, Claimant answered "No" to the questions "Do you advertise?" and "Do you have business calling cards?" R. Item No. 3. While Claimant testified that she typically drove for Three Rivers 25 to 30 hours per week, N.T., 4/11/19, at 25, there was no evidence establishing the "level of time and effort" Claimant put into any alleged transportation business *outside* of her driving assignments for Three Rivers. Claimant also continued to look and apply for a job in an unrelated field while performing transportation services for Three Rivers. Bd.'s Order, 6/14/19, at 1; N.T., 4/11/19, at 27. As this Court recognized in *Lowman*, "[c]laimants who are receiving [UC] benefits after separating from employment often engage in temporary assignments to supplement their income or

---

[8] The Pennsylvania Supreme Court granted allowance of appeal in *Lowman* on December 26, 2018, but, as of the date of this Opinion, has not yet issued a decision.

to assist them in finding a full-time employer. *These assignments do not render a claimant ineligible for [UC] benefits*." 178 A.3d at 901 (emphasis added).

In its appellate brief, Three Rivers contends that Claimant was self-employed as an independent contractor because she signed an Independent Contractor Agreement and, under that Agreement, she had the right to perform transportation services for others and to control the hours and days she worked. However, simply because Claimant's contract with Three Rivers provided that she *could* provide transportation services for others is not dispositive of the self-employment issue. *See Quality Care Options v. Unemployment Comp. Bd. of Review*, 57 A.3d 655, 661 (Pa. Cmwlth. 2012) (recognizing that while it is an important factor, "the existence of [an] 'Independent Contractor Agreement' is not, by itself, dispositive"). This Court rejected a similar assertion by the employer in *Jia*, stating:

> [T]he record here lacks any evidence that [the c]laimant customarily engaged in an independent business or performed programming services for any other business. . . . *the c]laimant's testimony is clear that he was not so engaged, and there is no contrary evidence. The single act of signing the consulting contract here does not suffice.* The contract language providing that [the c]laimant *could* work for others does not establish that he engaged in an independent business, and *did* work for others.

55 A.3d at 549 (emphasis added).

Furthermore, as explained above, because Claimant was already receiving UC benefits due to her separation from Clean Rental, the focus of our inquiry here is not Claimant's relationship with Three Rivers, but whether Claimant took any positive steps toward establishing her own transportation business. *See Lowman*, 178 A.3d at 902-03. The Board found, based on the evidence of record, that she did not. Bd.'s

11

Order, 6/14/19, at 1.[9]  Therefore, we conclude that Claimant did not engage in disqualifying self-employment under Section 402(h) of the Law.

## 2. Section 402(e) Claim (Appeal No. 823 C.D. 2019)

Next, Three Rivers asserts that the Board erred in reviewing Claimant's eligibility under Section 402(e) of the Law, arguing instead that it should have reviewed her eligibility under Section 402(b) of the Law.[10]  Three Rivers contends that Claimant was not discharged as she had claimed, but voluntarily quit without cause of a necessitous and compelling nature.  We disagree.

"Whether a claimant's separation from employment was voluntary or a discharge[] is a question of law for this Court to determine by examining the totality of the facts surrounding the termination."  *Key v. Unemployment Comp. Bd. of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996).  "However, it is [the] claimant's burden to prove that [her] separation from employment was a discharge."  *Id.*  This Court has explained:

> A claimant seeking [UC] benefits bears the burden of establishing either that (1) [her] separation from employment was involuntary or (2) [her] separation was voluntary but [s]he had cause of a necessitous or compelling nature that led [her] to discontinue the relationship.

---

[9] We further note that, as in *Lowman*, there is no evidence here that Claimant could legally transport passengers for compensation outside of her contract with Three Rivers.  As Judge McCullough aptly observed in her Concurring and Dissenting Opinion in *Lowman*, "It has for a long time been illegal—and continues to be illegal—to transport passengers for compensation in Pennsylvania without a taxicab or limousine license.  There is no evidence that [the c]laimant has either one of these licenses . . . ."  *Lowman*, 178 A.3d at 905 (McCullough, J., concurring and dissenting) (internal citation omitted).

[10] Section 402(b) of the Law provides that an employee shall be ineligible for UC benefits for any week "[i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."  43 P.S. § 802(b).

12

*Watkins v. Unemployment Comp. Bd. of Review*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013) (citations omitted). "[A] finding of voluntary termination is essentially precluded unless the claimant had a conscious intention to leave [her] employment." *Id.*

Here, the evidence showed that throughout Claimant's period of employment, Three Rivers sent Claimant driving assignments via email or text message based on her availability. F.F. No. 4; N.T., 4/11/19, at 24. Claimant testified that her availability was usually 8:30 a.m. to 3:00 p.m. every day of the week. *Id.* Before January 31, 2019, Claimant worked for Three Rivers between 25 and 30 hours per week, N.T., 4/11/19, at 25, and Three Rivers offered Claimant between 9 and 13 driving assignments each week, *see id.*, Ex. ER-3. After completing her driving assignments the day before and being involved in a car accident, Claimant called Three Rivers on the morning of January 31, 2019 and informed the Office Manager that she was taking the day off because she had already had an accident and the roads were too slippery to be out driving. F.F. No. 13.[11] Claimant credibly testified that after that date, Three Rivers did not offer her any more driving assignments. F.F. No. 14; Ref.'s Order, 4/19/19, at 3.

At the hearing, Ms. Lilly testified that sometime in February, she called Claimant to ask if she wanted more trips, and Claimant replied that she did not because she had just registered for school. N.T., 4/11/19, at 15-16. However, Ms. Lilly admitted that this conversation took place *after* she had received the Employer Questionnaire from the Department inquiring about Claimant's separation from employment. *Id.* at 16; *see* R. Item No. 2 (the cover letter accompanying the

---

[11] On her Claimant Questionnaire filed with the Department, Claimant stated that she called off work on January 31, 2019 because she "had bald tires on [her] vehicle[] and felt it was unsafe to drive due to the icy conditions." R. Item No. 3.

Employer Questionnaire states that it was mailed to Employer on February 15, 2019). Moreover, Claimant testified that "two weeks after I didn't receive [any] more text messages from Three Rivers, I started searching online [for] a school." *Id.* at 27.

Based on Claimant's testimony, which the Board expressly credited, the Board found that Three Rivers stopped offering Claimant work after January 31, 2019, thereby rendering her separation involuntary. F.F. Nos. 13, 14; Bd.'s Order, 6/14/19, at 1. The Board also specifically rejected Three Rivers' contention that Claimant voluntarily quit and was not discharged. Ref.'s Order, 4/19/19, at 3; Bd.'s Order, 6/14/19, at 1. Finally, the Board found that Three Rivers put forth no evidence establishing that Claimant committed disqualifying willful misconduct. Ref.'s Order, 4/19/19, at 3; Bd.'s Order, 6/14/19, at 1. Therefore, we conclude that the Board properly determined that Claimant was eligible for UC benefits under Section 402(e) of the Law.

### Conclusion

Accordingly, we affirm the Board's Orders.

_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Three Rivers Transportation,     :
                   Petitioner     :
                                  :
        v.                      :   Nos. 822 C.D. 2019 and 823 C.D. 2019
                                    :
Unemployment Compensation Board  :
of Review,     :
                   Respondent     :

# **O R D E R**

AND NOW, this 10th day of July, 2020, the Orders of the Unemployment Compensation Board of Review, dated June 14, 2019, in these consolidated appeals are hereby AFFIRMED.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Three Rivers Transportation, : 
              Petitioner : 
       : 
       :   Nos. 822 & 823 C.D. 2019
      v. : 
       :   Submitted: May 15, 2020
Unemployment Compensation : 
Board of Review, : 
            Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

***OPINION NOT REPORTED***

CONCURRING OPINION
BY JUDGE McCULLOUGH                          FILED: July 10, 2020

I concur in the result reached by the Majority because faithful application of the "positive steps" test adopted by this Court in *Lowman v. Unemployment Compensation Board of Review*, 178 A.3d 896 (Pa. Cmwlth. 2018) (en banc), *appeal granted*, 199 A.3d 862 (Pa. 2018), to the facts of this case, compels such a result. However, I write separately to state that I continue to maintain the position expressed in my concurring and dissenting opinion in *Lowman*, which advocated against a "positive steps" test in favor of the traditional test for determining "self-employment," as set forth by our Supreme Court in *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 892 A.2d 781 (Pa. 2006). *See Lowman*, 178 A.3d at 903-10 (McCullough, J., concurring and dissenting).

Hence, I respectfully concur in the result.

_____
PATRICIA A. McCULLOUGH, Judge