# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mariana Collins,                              :
                Petitioner          :
                                :
           v.                        :    No. 754 C.D. 2021
                                :    Submitted:  February 11, 2022
Unemployment Compensation                     :
Board of Review,                              :
                Respondent         :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED:  August 9, 2022

Mariana Collins (Claimant), pro se, petitions for review of the May 27, 2021 Order of the Unemployment Compensation (UC) Board of Review (Board), which affirmed a Referee's Decision finding Claimant ineligible for UC benefits pursuant to Section 402(h) of the UC Law (Law),[1] 43 P.S. § 802(h).  On appeal, Claimant argues that her actions in setting up a limited liability company (LLC) to sell items, which she created as a hobby, on the internet to make extra money was insufficient to constitute self-employment under Section 4(*l*)(2)(B) of the Law, 43 P.S. § 753(*l*)(2)(B), so as to render her ineligible for the UC benefits she had been receiving from a prior position.  Because we conclude that Claimant's conduct did not rise to customary involvement in an independently established business as a matter of law, we reverse.

---

[1] Act of December 5, 1936, *as amended*, 43 P.S. § 802(h) (providing, in relevant part, that "[a]n employe shall be ineligible for compensation for any week" "in which [the employe] is engaged in self-employment").

## I. BACKGROUND

Claimant filed a claim for UC benefits on May 6, 2020, based on a separation from her position as an audiologist with Pinnacle ENT Associates LLC (Pinnacle), with her last day of work being January 30, 2019. (Certified Record (C.R) Item 2 at 1-2.) Claimant previously received UC benefits based on her separation from Pinnacle. (C.R. Item 6 at 6-7.) In a supplemental information form, titled "Owner Business," Claimant indicated that she opened an online business on March 9, 2020, that sold goods and services and advertised online beginning May 6, 2020. (C.R. Item 2 at 4-5.) In a second supplemental information form, Claimant indicated that she had previously worked part time as an adjunct instructor for West Chester University (WCU), but her services were not renewed as she was "[n]ot needed." (*Id.* at 7.)

A UC Service Center issued a notice of determination, finding Claimant ineligible for benefits under Section 402(h) of the Law based on the conclusion that Claimant engaged in self-employment. (C.R. Item 5 at 1.) Claimant appealed, stating that she

> filed for [the] initial [UC] benefits on February 1, 2019. At that time, [she] informed the state of Pennsylvania that [she] would be working at WCU part time. It was established that during the fiscal year of 2018 [she] earned approximately $90,000 in gross salary from [Pinnacle] as [it] was [her] main employer. [She] received [UC] benefits . . . until the funds for 2019 were exhausted. . . . The letter of exhaustion stated that if [she] w[as] still unemployed in 2020 that after February 1[,] 2020 [she] would be able to claim [UC] benefits again from [Pinnacle]. WCU was never [her] main employer.

(C.R. Item 6 at 6-7.) Claimant further explained that, due to a non-compete clause, she could not work within a 30 mile radius of any Pinnacle office and that

[i]n the interim of trying to find adequate employment [she] turned [her] hobby into a side business. [She] followed all the appropriate laws to form the business as [she] underst[oo]d the need to pay appropriate taxes and [her] online store opened on March 9, 2020. It has brought in a whopping $500. It is registered as an LLC because [she] sell[s] bath teas and should someone have an allergic reaction and decide to sue [her], [she] didn't want to lose [her] house because [she] ha[s] no money otherwise to pay. [She] do[es] not receive a salary from this business. It is not successful by any means. It is merely legal on paper and while filling out [her] unemployment [she] wanted to be fully honest as [she] was when [she] filled out the information while working at WCU.

(*Id.*)

A Referee held a hearing, at which Claimant testified regarding her unemployment, her prior receipt of UC benefits, the expiration of those benefits, her online business selling jewelry, the steps she took to begin that business, and her attempts to find a position as an audiologist. (*See* C.R. Item 10 (Transcript) at 3-6.) No representative from either Pinnacle or the Department of Labor and Industry appeared in opposition to Claimant's appeal. Based on the testimony, the Referee made the following Findings of Fact:

1. On March 9, 2020, the Claimant started her own business.

2. The Claimant utilized the Etsy online store to sell pieces of jewelry which the Claimant made.

3. Etsy deducted a fee to use [its] platform from the price of the jewelry.

4. The Claimant sold four pieces of jewelry.

5. The Claimant set the price of the items.

6. The Claimant formed a[n LLC] for her business named[] Ceiba Tree LLC.

3

7. The Claimant registered her business . . . with the Department of State [(Department)] in the Commonwealth of Pennsylvania.

8. The Claimant also opened a bank account for the business.

9. The Claimant was at risk of earning a profit or sustaining a loss based on the performance of her business.

10. The Claimant is trained as an Audiologist but was not looking for full-time work in her field because of a restrictive covenant placed on the Claimant by her prior Employer[, Pinnacle,] which did not allow her to work in her field within 30 miles of any of [Pinnacle's] business locations, or she would face legal action.

(Referee Decision, Findings of Fact (FOF) ¶¶ 1-10.)[2] The Referee affirmed the UC Service Center's finding that Claimant was ineligible for benefits on the basis that Claimant engaged in self-employment by "engag[ing] in positive acts to establish an independent business venture." (Referee Decision at 2.) Those steps, according to the Referee, included Claimant's acts of incorporating her business, registering the business with the Department, opening a bank account for the business, and selling four pieces of jewelry at a price that she set. (*Id.*) The Referee concluded that, although the business had not yet earned a profit, "Claimant was an unemployed businessperson," and the Law was not intended "to compensate individuals who fail in their business ventures." (*Id.* at 2-3.)

Claimant appealed to the Board, which concluded that the Referee properly held that Claimant engaged in self-employment through her online business and was, therefore, ineligible for UC benefits. (Board Order.)[3] Accordingly, the Board

---

[2] The Referee's Decision is found in the Certified Record at Item 11.
[3] The Board's Order is found in the Certified Record at Item 19.

adopted and incorporated the Referee's findings and conclusions and affirmed the Referee's Decision. (*Id.*) Claimant now petitions this Court for review.[4]

## II. DISCUSSION

### A. *Parties' Arguments*

Claimant argues that the Board erred in determining that she engaged in self-employment because she "was not customarily engaged in an independently established trade, occupation, profession[,] or business." (Claimant's Brief (Br.) at 11.) Claimant compares this matter to *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005 (Pa. Cmwlth. 1990), asserting that she is like the claimant in *Buchanan* whom this Court determined was not engaged in the business of selling jewelry on a permanent basis where the claimant set up a booth at a weekly flea market and spent his own money to purchase tools and supplies. Claimant contends her activities on Etsy should not render her ineligible for UC benefits because, although she registered her business as an LLC and set up a bank account, selling only four necklaces as a way to earn extra money on the side, without any intent to make a living from that activity, does not rise to the level of being customarily engaged in the business. Claimant alternatively requests that the matter be remanded because the Referee did not sufficiently develop the record and asserts that the Board did not address the legal arguments she raised on appeal.

The Board responds that the law is well settled that UC benefits may not be used "to fund an individual's start up business" and that "[w]hen an individual takes

---

[4] "Our review of the Board's decision is limited to determining whether an error of law was committed, [whether] constitutional rights were violated, or [whether] necessary findings of fact were supported by substantial evidence." *Doyle v. Unemployment Comp. Bd. of Rev.*, 58 A.3d 1288, 1291 n.2 (Pa. Cmwlth. 2013).

5

positive steps to start their own business, they become self-employed and ineligible for such benefits." (Board's Br. at 4.) Relying on *Leary v. Unemployment Compensation Board of Review*, 322 A.2d 749 (Pa. Cmwlth. 1974), and *Salamak v. Unemployment Compensation Board of Review*, 497 A.2d 951 (Pa. Cmwlth. 1985), the Board asserts that the date of incorporation or registration is the date a claimant's self-employment begins because, "while . . . not the final act in establishing an independent business enterprise, it [is] clearly a positive act towards that end." (*Id.* at 7.) Further, the Board contends, this Court has found a claimant is engaged in self-employment and ineligible for benefits where the claimant establishes and advertises a new business and actively performs services for that business. (*Id.* at 8 (citing *Balmer v. Unemployment Comp. Bd. of Rev.*, 368 A.2d 1349 (Pa. Cmwlth. 1977)).) The Board argues that Claimant's actions reflect her establishing a new business and performing services in an attempt to earn a profit and constitute sufficient "positive steps toward establishing an independent business" that render Claimant ineligible for UC benefits. (*Id.* at 9.) The Board asserts that Claimant's reliance on *Buchanan* is misplaced because, there, the claimant did not establish a corporation for the purpose of selling jewelry, which this Court has used to distinguish *Buchanan* in two unreported opinions.[5] (*Id.* at 10-11 (citing *Coleman v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 210 C.D. 2016, filed Dec. 21, 2016), and *Banyas v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., Nos. 521 & 522 C.D. 2009, filed Oct. 14, 2009)).) The Board further asserts that *Buchanan* is distinguishable because Claimant took steps to establish her business beyond just selling her merchandise.

---

[5] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion may be cited as persuasive.

6

As to Claimant's alternative arguments, the Board posits that Claimant waived any argument regarding the Referee's alleged failure to develop the record by not raising that issue on appeal to the Board. Further, because she did not raise the issue of the Board's failure to address her legal arguments in the Statement of the Questions Involved portion of her brief, the Board asserts that Claimant also waived this issue. (Board's Br. at 12.)

*B. Analysis*

Under Section 402(h) of the Law, a claimant is ineligible for UC benefits for any week "[i]n which [s]he is engaged in self-employment." 43 P.S. § 802(h). Whether a UC claimant is self-employed and ineligible for benefits is a question of law subject to plenary review by this Court. *Frimet v. Unemployment Comp. Bd. of Rev.*, 78 A.3d 21, 25 (Pa. Cmwlth. 2013). In considering this legal issue, we must remember "the . . . Law is a remedial statute, and . . . its provisions must be liberally construed and broadly construed so that its objectives (insuring that employees who become unemployed through no fault of their own are provided with some semblance of economic security) may be completely achieved." *A Special Touch v. Dep't of Lab. & Indus.*, 228 A.3d 489, 503 (Pa. 2020) (quoting *Wedner v. Unemployment Comp. Bd. of Rev.*, 296 A.2d 792, 796 (Pa. 1972)).

The Law "does not define the term 'self-employment.' Yet, the determination that an individual is self-employed is highly consequential" because an "individual who is otherwise eligible for benefits due to separation from employment receives no benefits for any week of self-employment." *Lowman v. Unemployment Comp. Bd. of Rev.*, 235 A.3d 278, 281 (Pa. 2020). That is the situation here – Claimant was eligible for UC benefits based on her separation from Pinnacle, but the finding of self-employment rendered her ineligible. "Whether an individual is self-employed,

7

as the term is used in [Section 402(h)] is to be determined through application of the control and independence factors in Section [4](*l*)(2)(B)" of the Law, which defines the term "employment." *Id.* at 298. In relevant part, Section 4(*l*)(2)(B) provides:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that--(a) such individual has been and will continue to be **free from control or direction** over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is **customarily engaged in an independently established** trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B) (emphasis added). "The Act treats 'services performed by an individual for wages' as employment until it is proven that the individual is not subject to control **and** is customarily engaged in an independently established trade, occupation, profession or business." *Lowman*, 235 A.3d at 297 (emphasis added). This test is often referred to as a two-prong test. The legal determination of whether a claimant is self-employed is to be made on the unique facts of each case, with no one circumstance being dispositive. *Id.* at 289, 302-03; *Humanus Corp. v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 307 C.D. 2019, filed May 13, 2020), slip op. at 11.

As to the first prong, which requires that the individual be "free from control and direction," "the evidence must show that the claimant is 'not subject to control or direction'" of another person or entity. *Lowman*, 235 A.3d at 300 (quoting 43 P.S. § 753(*l*)(2)(B)(a)). In situations where the disqualifying self-employment is due to a claimant allegedly having started their **own** business, the control factor is necessarily satisfied. *Buchanan*, 581 A.2d at 1007. For example, here, Claimant's testimony established that she had control over the online business and "ha[d]

8

acquired the traditional trappings of a business." *Lowman*, 235 A.3d at 302. Accordingly, Claimant was "free from control or direction over the performance of such services . . . in fact." 43 P.S. § 753(*l*)(2)(B).

As to the second prong, which requires that the individual be "customarily engaged" "in an independently established trade, occupation, or business," the Supreme Court explained that these are separate inquiries and that both must be satisfied to show that the claimant is engaged in self-employment. *Lowman*, 235 A.3d at 300. The "independently established" component shares the factors related to the control factor, as well as additional considerations. *Id.* at 302 (citing *Danielle Viktor, Ltd. v. Dep't of Lab. & Indus., Bureau of Emp. Tax Ops.*, 892 A.2d 781, 797-98 (Pa. 2006)).[6] Again, in situations where, as here, the disqualifying self-employment is due to the claimant allegedly having started their **own** business, the independently established part of the second prong is satisfied.

In addressing the "customarily engaged" component, the Supreme Court has looked to the definitions of "customary" as meaning "commonly practiced, used, or observed," and "engage" as meaning "to employ or involve oneself; to take part in;

---

[6] These considerations include: "(1) whether the individual is able to work for more than one entity; (2) whether the individual depends on the existence of the entity for ongoing work; and (3) whether the individual was hired on a job-to-job basis and could refuse any assignment." *Lowman*, 235 A.3d at 302. The Supreme Court cautioned, however, that this list is not exclusive and no one factor is dispositive, explaining that

> [w]hile the independence factor may be established through evidence that the claimant has acquired the traditional trappings of a business, *e.g.*, a license, a lease, an ownership interest in the assets of a trade or business, business cards, clients, advertising, and/or evidence related to the other factors considered by this Court in *Danielle Viktor*, . . . no one circumstance is dispositive, and each case must be addressed on its unique facts.

*Id.* at 302-03.

9

to embark on." *Id.* at 301 (quoting *Staffmore, LLC v. Unemployment Comp. Bd. of Rev.*, 92 A.3d 844, 847 (Pa. Cmwlth. 2014) (internal quotation marks omitted)). Based on those definitions, the Supreme Court stated that "the fact that an unemployed person . . . accept[s] an **occasional** offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business." *Id.* (quoting *Silver v. Unemployment Comp. Bd. of Rev.*, 34 A.3d 893, 898 (Pa. Cmwlth. 2011)) (emphasis added). Thus, relevant to determining whether Claimant is customarily engaged under Section 4(*l*)(2)(B) of the Law is an examination of whether she engaged in the alleged disqualifying work activity only occasionally.

Further, the Supreme Court advised that the analysis should focus on the conduct that actually occurred, not hypothetical or theoretical conduct. *Lowman*, 235 A.3d at 303. The Court stated:

> [i]n the context of determining whether an individual is engaged in self-employment and therefore, ineligible for benefits, an analysis using Section [4](*l*)(2)(B) does not evaluate what a claimant could do, but what [s]he has done and/or is doing in terms of providing personal services for remuneration. Looking at a claimant's real-time activities through the lens of Section [4](*l*)(2)(B) avoids speculation based on hypothetical considerations and aids in evaluating a claimant's actual status for eligibility purposes.

*Id.* Therefore, in analyzing whether Claimant's conduct constitutes self-employment, we must examine her real-time activity and avoid hypothetical speculation about what activities she could have engaged in.

After setting forth the above test in *Lowman*, the Supreme Court recognized that *Lowman* was a situation involving independent contractors, which differed from instances "where the personal services are performed by an individual in a stand-

10

alone context," such as the present case. 235 A.3d at 298 & n.24. In these latter cases, the "positive steps" analysis has traditionally been performed,[7] and the Supreme Court "express[ed] no opinion on the use of a 'positive steps' analysis **as a part of the test** for self-employment embodied in Section [4](*l*)(2)(B)," as had been done in *Buchanan* and *Teets v. Unemployment Compensation Board of Review*, 615 A.2d 987 (Pa. Cmwlth. 1992). *Id.* at 298 n.24 (emphasis added). Therefore, as the Supreme Court did not disturb our precedent applying the positive steps analysis as a part of the two-prong approach discussed in *Lowman*, we apply that approach here.

Claimant likens her situation to those in *Buchanan* and *Teets* and contends that, as in those cases, her actions do not constitute self-employment. In *Buchanan*, the claimant was discharged from his position and, while receiving UC benefits, expended $2,000 on spools of gold chain to make jewelry to sell at a flea market. The claimant was found ineligible for benefits on the basis that he was self-employed, but this Court reversed. We held that there was no dispute that the control prong was satisfied because the claimant was in total control of his selling of jewelry at the flea market. *Buchanan*, 581 A.2d at 1007. Turning to whether the claimant customarily engaged in an independently established business, we concluded he was not so engaged, reasoning:

> [t]he claimant in this case did not form a corporation for the purpose of selling jewelry. He did not advertise, list a telephone number for this alleged business nor did he obtain insurance for his activity. The claimant testified at the hearing before the referee that **he had no intent to sell jewelry at the flea market on a permanent basis; the activity**

---

[7] The Supreme Court rejected the use of the "positive steps" analysis in independent contractor situations because "Section [4](*l*)(2)(B) requires a structured two-factor analysis of a claimant's personal services where they are performed within the context of a work relationship with a third party." *Lowman*, 235 A.3d at 298 & n.23.

11

**was one on the side to make some extra money**. If the facts of this case had been that the claimant was **selling jewelry on a more consistent basis**, or that **he was moving from flea market to flea market** or was selling also out of his home, we would be more apt to find that he had embarked on an independent business venture. We decline, however, to find that the act of **setting up a booth at a weekly flea market constitutes customary engagement** in an independently established trade, occupation, profession or business under Section 4(*l*)(2)(B) of the Law.

*Buchanan*, 581 A.2d at 1009. Thus, for the purposes of customary engagement, we considered whether: the claimant had incorporated or registered the business; the claimant had advertised; the claimant had obtained insurance; the intent of the claimant to engage in the business on a permanent basis or simply to use the business as a means to make money on the side; the degree to which the claimant was actively engaged in furthering the business, such as selling occasionally at a single flea market; and whether the claimant was using his own home or property to operate the business.

In *Teets*, we applied *Buchanan* to a different factual scenario and reached the same result. There, the claimant was separated from her 24-year employment as an executive and applied for UC benefits. Thereafter, the claimant attended a skincare sales program meeting, signed an agreement to be a distributor, and paid approximately $250 for a sales kit. The claimant engaged others to join the program and sell items, but, ultimately, received less than six dollars as commission. After the claimant was found ineligible for benefits due to being self-employed and the Board affirmed, this Court reversed. In doing so, we disagreed with the referee's conclusion that, while the claimant's activity would be a "side-line activity" under the Law, the fact that the claimant did not begin the activity until after she was laid off meant she was self-employed. *Teets*, 615 A.2d at 989. We stated that "the fact

12

that an activity which may generate a limited amount of income[, which is a side-line activity,] is not undertaken while a claimant is still employed does not automatically make [that activity] 'self-employment.'" *Id.* Instead, the claimant's activities had to be reviewed to see if they established that the claimant was customarily engaged. After comparing the facts in *Teets* to those in *Buchanan*, we determined that the *Teets'* claimant was not customarily engaged in an independent trade because her activities amounted only to those of a "side[-]line activity." *Id.* at 990. We explained that "[t]here was no finding and no evidence presented as to the level of time and effort [the] claimant put into this project," the "[c]laimant spent only $250 on a sales kit," and the "[c]laimant received less than $6 in income from her activities." *Id.* Accordingly, in addition to the factors in *Buchanan*, we also considered the amount of money a claimant puts into the activity and the compensation a claimant receives from the activity to determine whether a claimant was customarily engaged in an independently established business. Applying those factors in *Teets*, we held that, as a matter of law, the claimant "was not engaged in self-employment so as to disqualify her from receiving benefits." *Id.*

Claimant argues that her activity of selling her jewelry and crafts online for extra money did not rise to the level of her being customarily engaged in an independently established business. Under these facts, we agree. As the Board found, Claimant established an LLC, registered that LLC with the Department, advertised her goods, and set up a bank account for the business so that she could sell her jewelry and crafts online, (FOF ¶¶ 6-8), which suggests that this venture was more established than those considered in *Buchanan* and *Teets*. However, when viewed through the prism of the modern-day marketplace and against the other factors found important in those cases, we conclude these facts are not dispositive

13

of the legal issue of whether Claimant was **customarily** engaged with this business so as to make her self-employed.

Similar to the claimant in *Buchanan* who sold his gold jewelry on a weekly basis at a single flea market, Claimant sold her jewelry in a single online shop, Etsy, which Claimant described as an online shop where artists can post their goods for sale online. (Transcript at 86.) In essence, Etsy is the online equivalent of the flea market at which the claimant set up his booth in *Buchanan*. Analogous to the claimant in *Buchanan*, who paid a weekly fee when he sold an item for the privilege of selling his goods at the flea market, Claimant paid a fee to Etsy for the privilege of selling her goods using that platform. Although Claimant indicated that she "went through the legalities to [set up a business] correctly," she paid only $97 to do so and, like the claimant in *Buchanan*, did not obtain insurance. (*Id*. at 85.) Lastly, similar to the claimant in *Buchanan*, Claimant's testimony reflects that this business was not intended to replace her permanent employment as an audiologist, but was a means to make some money while dealing with the difficulty of the restrictive covenant imposed by Pinnacle. This latter point was supported by the fact that Claimant credibly testified that, by the time of the hearing, she had moved so as to avoid the strictures of that covenant. (*Id*. at 86-87.)

As for *Teets*, here, as in that case, there was little "evidence presented as to the level of time and effort [that C]laimant put into this project." 615 A.2d at 990. There was no testimony as to the amount of time or money Claimant spent in creating her crafts or how much time she spent on the business per week. The only evidence regarding Claimant's expenditures was that she expended $97 to register the business with the Department, and paid a fee to Etsy on each item sold, with the one example being that she had to pay Etsy $25 on an item that sold for $85. And, while

14

Claimant appears to have earned as much as $500 from the 4 sales, (C.R. Item 6 at 6-7), which is more than the $6 earned by the claimant in *Teets*, the Court is unconvinced that this limited income means that Claimant's activity reflects self-employment, rather than engaging in a side-line activity or business under *Teets*. Finally, to the extent Claimant appears to have advertised her goods on social media platforms, there is no evidence describing the extent or cost of that advertising, and we view this as similar to the *Teets*' claimant's efforts in enlisting other people into the pyramid sales program to sell products on, essentially, the claimant's behalf.

As in *Buchanan*, "[i]f the facts of this case had been that [C]laimant was selling jewelry on a more consistent basis," we would be more apt to find that she was customarily engaged in her business. *Buchanan*, 581 A.2d at 1009. However, analyzing what Claimant actually "has done . . . in terms of providing personal services for remuneration," *Lowman*, 235 A.3d at 303, and considering that four sales is far less customary than setting up a booth and selling jewelry at a flea market every weekend, *Buchanan*, 581 A.2d at 1009, we conclude that Claimant was not customarily engaged in selling her merchandise via Etsy. Moreover, the evidence indicates that, like the claimants in *Buchanan* and *Teets*, Claimant began this venture as a side business to generate whatever money she could while dealing with the restrictions on her ability to obtain employment as an audiologist. As the claimant in *Buchanan* testified "that he had no intent to sell jewelry at the flea market on a permanent basis" and that "the activity was one on the side to make some extra money," *Buchanan*, 581 A.2d at 1009, the record before us reflects that Claimant intended this business to be of a similar nature. Although Claimant did not specifically testify as to her intent, she did testify that she was desperate to make any income while she was unable to work her chosen career at the time, was an artist

15

who made handmade jewelry, and that Etsy provided an online medium to sell such merchandise. Further, in the letter that Claimant attached to her appeal of the Service Center's denial, Claimant stated that the business was her turning her hobby into a side business. (C.R. Item 6 at 6-7.) Under these facts, this Court concludes, as a matter of law, that this activity amounts to more of an occasional activity generating a limited amount of income, rather than the level of customary engagement that would rise to the level of self-employment under Section 4(*l*)(2)(B) of the Law.

The Board argues that our precedent compels the opposite result, relying on *Leary*, 322 A.2d at 249, *Salamak*, 497 A.2d at 951, and *Balmer*, 358 A.3d at 1349. Because these cases are factually distinguishable, we disagree. In *Leary*, the claimant was laid off from his position as a general construction superintendent. After applying for and receiving UC benefits, the claimant formed a construction corporation, entered into an agreement to buy a parcel of land, and then began constructing houses. This Court held that this conduct constituted self-employment as of the date of the incorporation, the date of the first positive move towards the claimant establishing his own business. Next, in *Salamak*, 497 A.2d at 954, this Court relied on *Leary* to hold that a claimant had engaged in self-employment, and was an "unemployed businessman" where, while receiving UC benefits, he became a one-third shareholder of a corporation, served as the corporate president, was a member of the board of directors, received a weekly salary, and became actively involved in the management of the business when a problem arose. Finally, in *Balmer*, this Court held that a claimant who worked as an elevator mechanic for 17 1/2 years and received UC benefits after being terminated from his employment engaged in self-employment by registering a fictitious corporate name, starting a company servicing elevators, and actually servicing elevators. The claimant spent

16

considerable sums for startup costs, advertising, and insurance but abandoned the business after it was not profitable. Thus, similar to the claimant in *Leary*, the claimant in *Balmer* created a business that put his career skills to work, and spent significant money and effort towards the business.

On the other hand, Claimant's activity of selling her handmade merchandise online stemmed from her hobby as an artist, and there is no evidence showing that she spent any significant time or effort toward the venture. This is unlike the claimants in *Balmer* and *Leary*, who created corporate entities to pursue their long-term careers and then, respectively, engaged in extended conduct such as expending considerable sums for operation and actually servicing elevators or entering into major agreements for land sales and the construction of homes thereon. Further, given the little evidence presented as to Claimant's actual involvement with the online business, the conduct of claimant in *Salamak* in sitting on the board, serving as the president, collecting a weekly check, and involving himself in management is more indicative of customary engagement. While the Board asserts that the common denominator of these cases–incorporation or registration–is alone sufficient to establish that Claimant was customarily engaged in a regularly established business, incorporation is just one of the non-exclusive factors going to the "regularly established" component of the independence prong. *Lowman*, 235 A.3d at 302-03. Further, finding one circumstance dispositive does not comport with the case-by-case review approved by the Supreme Court in *Lowman*. As such, because *Leary*, *Salamak*, and *Balmer* involve claimants whose conduct rose to the level of customary involvement, they are not inconsistent with this opinion.

Similarly, this Court's unreported decisions in *Banyas* and *Coleman*, cited by the Board as distinguishing *Buchanan*, do not compel a contrary result. In *Banyas*,

the claimant was laid off from a business loan center, had a degree in business administration/accounting, completed a real estate salesperson examination, and then created, registered, and provided services for a business purporting to engage in commercial loan brokering, real estate agent services, and assistance with residential mortgages. The claimant earned over $4,600 in commissions for his efforts. We held that the claimant was engaged in self-employment. In *Coleman*, the claimant was laid off from his profession as an emergency medical technician and then incorporated his own ambulance business, Universal Ambulance, which required that he obtain a license and insurance to operate. The claimant sought to make the income from this venture his sole source of income. We held that this conduct constituted self-employment and distinguished the claimant's intent to incorporate and run his business to be his primary source of income from cases that involved the creation of a side-line business, as in *Buchanan* and *Teets*, where the claimants had only intended to start side ventures.

In both *Banyas* and *Coleman*, the claimants created and incorporated companies with the intent to establish a full-time venture within their chosen, professional careers. Under those circumstances, such conduct rises to self-employment under Section 4(*l*)(2)(B) of the Law. Importantly, in *Coleman*, this Court recognized that simply engaging in a side-line business was not self-employment under Section 4(*l*)(2)(B). *Coleman*, slip op. at 7-8. Here, Claimant's attempt to make extra income while she was unable to continue her professional career was creating a side business out of her hobby, rather than an attempt to create a full-time venture to replace that career.

Reviewing these cases, this situation is more akin to *Buchanan* and *Teets*, than *Leary*, *Salamak*, *Balmer*, *Banyas*, and *Coleman*. While there is some evidence that

18

Claimant took more formalized steps with her business than the claimants in *Buchanan* and *Teets*, there is no indication in the record that Claimant's online business was intended to replace audiology as her primary means of employment; rather it was merely a way of turning her hobbies into extra money by selling her crafts and jewelry at the online equivalent of a flea market. It was, as in *Teets*, essentially a side-line activity or business that, even though it was begun after her separation from Pinnacle, did not establish that Claimant was self-employed. Holding that, as a matter of law, Claimant was not customarily engaged in an independent business or trade under these circumstances is consistent with the well settled principle that "the . . . Law is a remedial statute, and . . . its provisions must be liberally construed and broadly construed so that its objectives . . . may be completely achieved," *A Special Touch*, 228 A.3d at 503, and the Supreme Court's recent statement that "the determination that an individual is self-employed is highly consequential" because an "individual who is otherwise eligible for benefits due to separation from employment receives no benefits for any week of self-employment," *Lowman*, 235 A.3d at 281. Because Claimant was not customarily engaged in an independently established business under Section 4(*l*)(2)(B) of the Law, she was not self-employed, and the Board erred as a matter of law in finding Claimant ineligible for UC benefits on this basis.[8]

### III. CONCLUSION

For the foregoing reasons, we reverse the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[8] Because we resolve this matter on this issue, we do not reach Claimant's remaining arguments.

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mariana Collins,                          :
                 Petitioner       :
                                      :
                v.              :     No. 754 C.D. 2021
                                      :
Unemployment Compensation                 :
Board of Review,                          :
                 Respondent      :

# O R D E R

**NOW**, August 9, 2022, the Order of the Unemployment Compensation Board of Review, dated May 27, 2021, is **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** President Judge